# Exhibit A

**Click here to Respond to Selected Documents**

**Sort Date Entries:** Descending Ascending

**Display Options:** All Entries ⌄

**11/26/2024**

**Corporation Served**
Document ID - 24-SMCC-12773; Served To - NATIONWIDE INSURANCE COMPANY OF AMERICA; Served Date - 11/22/2024; Served Time - 14:25:00; Service Type - SP; Reason Description - SERV; Service Text -SHELLEY LEWIS, AUTHORIZED AGENT

**Notice of Service**
Affidavit of Service - Nationwide.
    **Filed By:** RANDALL LEE RHODES
    **On Behalf Of:** DAVE KWITEK, DVG ORIEN LLC

**11/21/2024**

**Entry of Appearance Filed**
Entry of Appearance and Designation of Lead Counsel - Randall Rhodes.
    **Filed By:** RANDALL LEE RHODES
    **On Behalf Of:** DAVE KWITEK, DVG ORIEN LLC

**11/20/2024**

**Summons Issued-Circuit**
Document ID - 24-SMCC-12773, for NATIONWIDE INSURANCE COMPANY OF AMERICA.

**Order - Special Process Server**

**Case Mgmt Conf Scheduled**

    Scheduled For: 03/10/2025; 9:00 AM; JOEL P FAHNESTOCK; Jackson - Kansas City

**Motion Special Process Server**
Motion for Approval and Appointment of Private Process Server.
    **Filed By:** RANDALL LEE RHODES
    **On Behalf Of:** DAVE KWITEK, DVG ORIEN LLC

**Filing Info Sheet eFiling**

    **Filed By:** RANDALL LEE RHODES

**Pet Filed in Circuit Ct**
Plaintiffs Petition for Damages; Exhibit A; Exhibit B; Exhibit C.
    **Filed By:** RANDALL LEE RHODES
    **On Behalf Of:** DAVE KWITEK, DVG ORIEN LLC



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>1 Nationwide Plz<br>Columbus, OH 43215-2226 |
| **Electronic copy provided to:** | Ashley Roberts |
| **Entity:** | Nationwide Insurance Company Of America<br>Entity ID Number 3286566 |
| **Entity Served:** | Nationwide Insurance Company of America |
| **Title of Action:** | Dave Kwitek, DVG Orien, LLC vs. Nationwide Insurance Company of America |
| **Matter Name/ID:** | Dave Kwitek, DVG Orien, LLC vs. Nationwide Insurance Company of America (16554680) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Jackson County Circuit Court, MO |
| **Case/Reference No:** | 2416-CV33260 |
| **Jurisdiction Served:** | Missouri |
| **Date Served on CSC:** | 11/22/2024 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Rouse Frets White Goss Gentile Rhodes, P.C.<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOEL P FAHNESTOCK | Case Number: 2416-CV33260 |
|---|---|
| Plaintiff/Petitioner:<br>DAVE KWITEK | Plaintiff's/Petitioner's Attorney/Address<br>RANDALL LEE RHODES<br>5250 W 116TH PL STE 400<br>LEAWOOD, KS 66211 |
| vs. | |
| Defendant/Respondent:<br>NATIONWIDE INSURANCE COMPANY OF AMERICA | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** **NATIONWIDE INSURANCE COMPANY OF AMERICA**
Alias:

CSC LAWYERS INCORP SERVICE CO
221 BOLIVAR STREET
JEFFERSON CITY, MO 65101

# PRIVATE PROCESS SERVER

*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

<u>20-NOV-2024</u>
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____ a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

*(Seal)*

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____
Date

_____
Notary Public

**Sheriff's Fees**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (11/2021) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 24-SMCC-12773**   1 of 1    Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 4 of 170

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| DAVE KWITEK, | ) | **JURY TRIAL DEMANDED** |
| 362 Steeple Point Way, | ) | |
| Verona, Wisconsin 53593, | ) | |
| | ) | |
| DVG ORIEN LLC, | ) | |
| 362 Steeple Point Way, | ) | |
| Verona, Wisconsin 53593, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | Division: |
| NATIONWIDE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| **SERVE REGISTERED AGENT,** | ) | |
| CSC-LAWYERS Incorporating | ) | |
| Service Company, | ) | |
| 221 Bolivar Street, | ) | |
| Jefferson City, Missouri 65101, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MOTION FOR APPROVAL AND APPOINTMENT OF PRIVATE PROCESS SERVER</u>

COMES NOW Plaintiff, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of D&B Legal Service, LLC.: Legal Names (s):

| | | |
|---|---|---|
| Alisha Allen PPS24-0003 | Anthony Dunne PPS24-0440 | Kennedy Hoy PPS24-0533 |
| Carl Barnett PPS24-0010 | Brandon Fisher PPS24-0040 | Jennifer Hyman PPS24-0063 |
| Thomas Bogue PPS24-0164 | Kurie Ghershini PPS24-0046 | Matthew Jones PPS24-0067 |
| Scott Brady PPS24-0020 | Bradley Gordon PPS24-0211 | Patrick Jones PPS24-0235 |
| Gary Burt PPS24-0173 | Mackenzie Green PPS24-0048 | Angelique Julian PPS24-0068 |
| Steven Butcher PPS24-0024 | Eric Hahn PPS24-0050 | Chelsey Ketron PPS24-0070 |
| Peggy Cranston-Butcher PPS24-0030 | Darnell Hamilton PPS24-0051 | Leisa Ketron PPS24-0069 |
| Bobby Calvert PPS24-0174 | James Hannah PPS24-0052 | Brent Kirkhart PPS24-0071 |
| Carolyn Champlin PPS24-0025 | Rufus Harmon PPS24-0053 | Janice Kirkhart PPS24-0072 |
| Scott Cisney PPS24-0026 | Stephen Heitz PPS24-0221 | Tyler Kirkhart PPS24-0073 |
| Lenora Cope PPS24-0489 | Bridgette Hight PPS24-0057 | Denis Kolb PPS24-0488 |
| James Cox PPS24-0029 | Wendy Hilgenberg PPS24-0487 | Michael Meador PPS24-0255 |
| Peggy Cranston-Butcher PPS24-0030 | James Hise PPS24-0443 | Heather Merfen PPS24-0085 |
| Ariel Derr PPS24-0486 | Wayne Holcomb PS24-0059 | Justin Mertzig PPS24-0505 |
| Chris Drummond PPS24-0439 | McKenna Howe PPS24-0416 | Matthew Millhollin PPS24-0261 |

Electronically Filed - JACKSON - KANSAS CITY - November 20, 2024 - 10:22 AM

Zachary Mueller PPS24-0089
Michael Noble PPS24-0095
Greg Noll PPS24-0096
Cody Patton PPS24-0282
Jacob Peterson PPS24-0370
Mike Perry PPS24-0098
Elizabeth Phillips PPS24-0446
Craig Podgurski JR PPS24-0100
Craig Poese PPS24-0101
Bill Powell PPS24-0103
Dee Powell PPS24-0104
Samantha Powell PPS24-0105
Kenneth Prewett PPS24-0107
Benjamin Purser PPS24-0289
Mark Rauss PPS24-0109

Ginger Robertson PPS24-0493
Kain Royer PPS24-0447
Kathy Rulo PPS24-0449
Rene Rulo PPS24-0448
Edna Russell PPS24-0450
Westley Seifert PPS24-0313
Joe Sherrod PPS24-0124
David Shirley PPS24-0125
Thomas Skinner PPS24-0317
Richard Skyles PPS24-0427
Mark Smith PPS24-0128
Anthony Spada PPS24-0322
Barbara Steil PPS24-0325
Randy Stone PPS24-0130
Sonja Stone PPS24-0131

Dylan Stricklin PPS24-0452
Kalen Stricklin PPS24-0451
Carrie Stroup PPS24-0453
Cody Swartz PPS24-0134
Austin James Weekley PPS24-0144
Doreen Weekley PPS24-0145
Ryan E Weekley PPS24-0146
Ryan M Weekley PPS24-0147
Robert Weishar PPS24-0148
Andrew Wickliffe PPS24-0150
Gregory Willing PPS24-0342
Conni Wilson PPS24-0154
Greg Zotta PPS24-0457

who are qualified persons to serve process, are not parties to the case and are not less than eighteen (18) years of age, as private process servers in the above cause to serve process in this case.

Respectfully submitted,

ROUSE FRETS WHITE GOSS GENTILE
RHODES P.C.

/s/ Randall L. Rhodes
Randall L. Rhodes   MO #43211
5250 West 116th Place, Suite 400
Leawood, Kansas 66211
(913) 387-1600
(913) 928-6739 fax
rrhodes@rousepc.com
*Attorneys for Plaintiff*

## ORDER

It is hereby ordered that the Plaintiff's Motion for Approval and Appointment of private process server is granted and the above-named individuals are hereby approved and appointed to serve process in the above-captioned matter.

11/20/2024
DEPUTY COURT ADMINISTRATOR

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

DAVE KWITEK,

                            **PLAINTIFF(S),**                **CASE NO. 2416-CV33260**

VS.                                                 **DIVISION 9**

NATIONWIDE INSURANCE COMPANY OF AMERICA,

                          **DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION

---

      NOTICE IS HEREBY GIVEN that this case is currently assigned to the Honorable JOEL P FAHNESTOCK and a Case Management Conference will be held with the Honorable JOEL P FAHNESTOCK on **10-MAR-2025** in **DIVISION 9** at **09:00 AM,** pursuant to Administrative Order. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

      A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

      At the Case Management Conference, counsel should be prepared to address at least the following:

      a.      A trial setting;

      b.      Expert Witness Disclosure Cutoff Date;

      c.      A schedule for the orderly preparation of the case for trial;

      d.      Any issues which require input or action by the Court;

      e.      The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ **JOEL P FAHNESTOCK**
JOEL P FAHNESTOCK**, Circuit Judge**

## Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
RANDALL LEE RHODES, 5250 W 116TH PL STE 400, LEAWOOD, KS 66211

Defendant(s):
NATIONWIDE INSURANCE COMPANY OF AMERICA
Dated: 20-NOV-2024

BEVERLY A. NEWMAN
Court Administrator

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| DAVE KWITEK, | ) | **JURY TRIAL DEMANDED** |
| 362 Steeple Point Way, | ) | |
| Verona, Wisconsin 53593, | ) | |
| | ) | |
| DVG ORIEN LLC, | ) | |
| 362 Steeple Point Way, | ) | |
| Verona, Wisconsin 53593, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | Division: |
| NATIONWIDE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| **SERVE REGISTERED AGENT,** | ) | |
| CSC-LAWYERS Incorporating | ) | |
| Service Company, | ) | |
| 221 Bolivar Street, | ) | |
| Jefferson City, Missouri 65101, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR APPROVAL AND APPOINTMENT OF PRIVATE PROCESS SERVER

COMES NOW Plaintiff, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of D&B Legal Service, LLC.: Legal Names (s):

| | | |
|---|---|---|
| Alisha Allen PPS24-0003 | Anthony Dunne PPS24-0440 | Kennedy Hoy PPS24-0533 |
| Carl Barnett PPS24-0010 | Brandon Fisher PPS24-0040 | Jennifer Hyman PPS24-0063 |
| Thomas Bogue PPS24-0164 | Kurie Ghershini PPS24-0046 | Matthew Jones PPS24-0067 |
| Scott Brady PPS24-0020 | Bradley Gordon PPS24-0211 | Patrick Jones PPS24-0235 |
| Gary Burt PPS24-0173 | Mackenzie Green PPS24-0048 | Angelique Julian PPS24-0068 |
| Steven Butcher PPS24-0024 | Eric Hahn PPS24-0050 | Chelsey Ketron PPS24-0070 |
| Peggy Cranston-Butcher PPS24-0030 | Darnell Hamilton PPS24-0051 | Leisa Ketron PPS24-0069 |
| Bobby Calvert PPS24-0174 | James Hannah PPS24-0052 | Brent Kirkhart PPS24-0071 |
| Carolyn Champlin PPS24-0025 | Rufus Harmon PPS24-0053 | Janice Kirkhart PPS24-0072 |
| Scott Cisney PPS24-0026 | Stephen Heitz PPS24-0221 | Tyler Kirkhart PPS24-0073 |
| Lenora Cope PPS24-0489 | Bridgette Hight PPS24-0057 | Denis Kolb PPS24-0488 |
| James Cox PPS24-0029 | Wendy Hilgenberg PPS24-0487 | Michael Meador PPS24-0255 |
| Peggy Cranston-Butcher PPS24-0030 | James Hise PPS24-0443 | Heather Merfen PPS24-0085 |
| Ariel Derr PPS24-0486 | Wayne Holcomb PS24-0059 | Justin Mertzig PPS24-0505 |
| Chris Drummond PPS24-0439 | McKenna Howe PPS24-0416 | Matthew Millhollin PPS24-0261 |

Zachary Mueller PPS24-0089
Michael Noble PPS24-0095
Greg Noll PPS24-0096
Cody Patton PPS24-0282
Jacob Peterson PPS24-0370
Mike Perry PPS24-0098
Elizabeth Phillips PPS24-0446
Craig Podgurski JR PPS24-0100
Craig Poese PPS24-0101
Bill Powell PPS24-0103
Dee Powell PPS24-0104
Samantha Powell PPS24-0105
Kenneth Prewett PPS24-0107
Benjamin Purser PPS24-0289
Mark Rauss PPS24-0109

Ginger Robertson PPS24-0493
Kain Royer PPS24-0447
Kathy Rulo PPS24-0449
Rene Rulo PPS24-0448
Edna Russell PPS24-0450
Westley Seifert PPS24-0313
Joe Sherrod PPS24-0124
David Shirley PPS24-0125
Thomas Skinner PPS24-0317
Richard Skyles PPS24-0427
Mark Smith PPS24-0128
Anthony Spada PPS24-0322
Barbara Steil PPS24-0325
Randy Stone PPS24-0130
Sonja Stone PPS24-0131

Dylan Stricklin PPS24-0452
Kalen Stricklin PPS24-0451
Carrie Stroup PPS24-0453
Cody Swartz PPS24-0134
Austin James Weekley PPS24-0144
Doreen Weekley PPS24-0145
Ryan E Weekley PPS24-0146
Ryan M Weekley PPS24-0147
Robert Weishar PPS24-0148
Andrew Wickliffe PPS24-0150
Gregory Willing PPS24-0342
Conni Wilson PPS24-0154
Greg Zotta PPS24-0457

who are qualified persons to serve process, are not parties to the case and are not less than eighteen (18) years of age, as private process servers in the above cause to serve process in this case.

Respectfully submitted,

ROUSE FRETS WHITE GOSS GENTILE
RHODES P.C.

/s/ Randall L. Rhodes
Randall L. Rhodes   MO #43211
5250 West 116th Place, Suite 400
Leawood, Kansas 66211
(913) 387-1600
(913) 928-6739 fax
rrhodes@rousepc.com
*Attorneys for Plaintiff*

## ORDER

It is hereby ordered that the Plaintiff's Motion for Approval and Appointment of private process server is granted and the above-named individuals are hereby approved and appointed to serve process in the above-captioned matter.

Date: _____     _____

Judge or Clerk

Electronically Filed - JACKSON - KANSAS CITY - November 20, 2024 - 10:21 AM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| DAVE KWITEK, | ) | **JURY TRIAL DEMANDED** |
| 362 Steeple Point Way, | ) | |
| Verona, Wisconsin 53593, | ) | |
| | ) | |
| DVG ORIEN LLC, | ) | |
| 362 Steeple Point Way, | ) | |
| Verona, Wisconsin 53593, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | Division: |
| NATIONWIDE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| **SERVE REGISTERED AGENT,** | ) | |
| CSC-LAWYERS Incorporating | ) | |
| Service Company, | ) | |
| 221 Bolivar Street, | ) | |
| Jefferson City, Missouri 65101, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' PETITION FOR DAMAGES

David Kwitek and DVG Orien LLC sue Nationwide Insurance Company of America and allege the following.

**I.    Nature of the Case**

1.    David Kwitek and DVG Orien LLC paid Nationwide Insurance Company of America for Nationwide insurance policy CPS7985403. Mr. Kwitek and DVG Orien made a claim under that policy for what was clearly a covered loss. Nationwide wrongfully and vexatiously refused to pay that claim.

2.　Mr. Kwitek and DVG Orien seek damages from Nationwide for Nationwide's breach of contract and vexatious refusal to pay for covered losses under Nationwide insurance policy CPS7985403.

## II.　<u>Parties</u>

3.　Mr. Kwitek is an individual who resides in Verona, Wisconsin.

4.　DVG Orien is a Missouri LLC with a principal place of business in Verona, Wisconsin.

5.　Nationwide is a foreign corporation with a principal place of business in Des Moines, Iowa. At all relevant times, Nationwide was doing business in Missouri. Nationwide sold policy number CPS7985403 to Mr. Kwitek and DVG Orien for the period April 27, 2024 through July 27, 2024. A copy of the policy is Exhibit A.

## III.　<u>Jurisdiction and Venue</u>

6.　This Court has subject matter jurisdiction over the case and jurisdiction to grant all the relief requested by Mr. Kwitek and DVG Orien.

7.　The Court has jurisdiction over Nationwide because it is registered to do business in Missouri and has consistent commercial interactions in Missouri, including, but not limited to entering into Nationwide policy number CPS7985403.

8.　Venue is proper in this Court under R.S.Mo. § 508.010 and because Nationwide conducts business in Jackson County, Missouri.

## IV.　<u>Factual Background</u>

9.　Mr. Kwitek and DVG Orien performed and oversaw certain renovation work on a building located at 8500 Ward Parkway in Kansas City Missouri.

10.     Before starting the renovation work, Mr. Kwitek and DVG Orien

obtained Nationwide policy number CPS7985403 to cover the work on the project.[1]

All premiums were timely paid and the policy was in effect on June 14, 2024. Mr.

Kwitek and DVG Orien are named insureds under the policy.



```
                  ══ COMMON POLICY DECLARATIONS ══
                   Underwritten by: Scottsdale Insurance Company        Policy Number
      NEW                          Home Office:                        CPS7985403
                        One Nationwide Plaza • Columbus, Ohio 43215
                               Administrative Office:
                     18700 North Hayden Road • Scottsdale, Arizona 85255
                            1-800-423-7675 • A Stock Company

ITEM 1. NAMED INSURED AND MAILING ADDRESS
DAVID KWITEK, DVG ORIEN LLC
*See Named Insured Schedule
362 STEEPLE POINT WAY                              NO FLAT CANCELLATION
VERONA WI 53593
AGENT NAME AND ADDRESS
AMWINS ACCESS INSURANCE (WAUKESHA, WI) 20975
SWENSON DR WAUKESHA WI 53186
                                   Agent No.: 48010          Program No.:    76

ITEM 2. POLICY PERIOD   From: 04/27/2024   To: 07/27/2024   Term: 91
              12:01 A.M., Standard Time at the mailing address shown in ITEM 1.
```

SCOTTSDALE INSURANCE COMPANY®

**SCHEDULE OF NAMED INSUREDS**

Policy No. CPS7985403          Effective Date 04/27/2024
                                             12:01 A.M. Standard Time

Named Insured DAVID KWITEK, DVG ORIEN LLC     Agent No. 48010

DAVID KWITEK, DVG ORIEN LLC

11.     On June 14, 2024, an ATM vendor reported to Mr. Kwitek that an ATM

in the building lost power. An electrician from Tann Electric was called and sent to

---

[1] The Nationwide policy was underwritten by Scottsdale Insurance Company. Scottsdale is part of
Nationwide's "group of companies." E&S/Specialty: About Us - Nationwide

the building. Upon arrival, the electrician discovered a large amount of water in the building.

12. A plumbing technician from KB Complete was sent to the building. Upon arrival at the building and assessing the situation, the KB Complete technician called American Water Damage, a mitigation contractor, to the scene.

13. After the main water valve was turned off in the building, two leaks were located. The first was in a lower-level utility room. The second was on the second floor.

14. Despite turning off the main water valve, water continued to leak into the building.

15. Several calls were made to the water utility to have the water to the building shut off. A technician from the water utility shut off the water to the building later that same day.

16. American Water Damage began removing excess water from the building after the water to the building was shut off that same day.

17. In the days following, an inspection by employees of KB Complete determined there were three leaks. Water pipes had been vandalized. The pipes were cut with a power saw.

18. A police report was filed documenting the vandalism.

19. The flooding water caused considerable damage to the building, including, but not limited to, damage to certain electrical components in the building.

4

20.     Nationwide was timely put on notice of the event, the losses, and the claim under the Nationwide policy.

21.     Mr. Kwitek and DVG Orien fully cooperated with Nationwide, timely providing Nationwide with everything it asked for, including, but not limited to the police report, documents relating to the damages, and cost of mitigation and repair documents.

22.     In a letter dated July 9, 2024, Nationwide declined to cover the loss. Nationwide contended in that letter that "[w]ater discharge, and vandalism are not covered causes of loss under the policy." A copy of the declination letter is Exhibit B.

23.     To date, Mr. Kwitek and DVG Orien have satisfied all relevant and applicable conditions precedent to obtaining payments owed under the Nationwide policy to the extent they have not been waived or abrogated by Nationwide's conduct, omissions, actions, or breaches.

## V.     <u>Pertinent Policy Provisions</u>

24.     The policy covers property damage.

SECTION I – COVERAGES
COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or **"property damage"** to which this insurance applies.

17. "Property damage" means:

a. **Physical injury to tangible property**, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See* Exhibit A, pp. 21 and 35.[2]

25.    "Vandalism, meaning willful and malicious damage to, or destruction of, the described property" is a covered cause of loss under the Nationwide policy. *Id.*, p. 107.[3]

## VI.    <u>Nationwide's Improper Denial</u>

26.    In her July 9, 2024 denial letter, Haley Moegenburg, a Claim Specialist II for Nationwide E&S/Specialty wrote the following:

The policy provides coverage for direct physical loss or damage to covered property caused by the covered causes of loss listed above. No damage from any covered cause of loss was reported. Vandalism, water discharge, wear and tear, and deterioration are not covered causes of loss. Additionally, the policy excludes from coverage damage caused by rupture or bursting of pipes and discharge of water from a system containing water. Therefore, no coverage is provided for the plumbing repair or water damages. Furthermore, no coverage is provided for mold, if any is discovered, because damage caused by mold is generally excluded from coverage and the damage was not caused by a covered cause of loss.

Unfortunately, we will not be able to make any payment.

*See* Exhibit B, p. 4.

---

[2] This page citation refers to the pdf page number. An alternative citation would be **CG 00 01 04 13** pp. 1 and 15.

[3] This page citation refers to the pdf page number. An alternative citation would be **CP 10 10 10 12**, p. 1.

27.     The denial letter misstates and misinterprets the Nationwide policy.

28.     The declination letter refers to "water." The "water" exclusion appears in ¶ B.1.g on page 109 of the policy. *See* Exhibit A, p. 109.[4] It reads as follows.

g. Water

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;
(b) Basements, whether paved or not; or
(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

*Id.*

---

[4] This page citation refers to the pdf page number. An alternative citation would be **CP 10 10 10 12**, p. 3.

29. The policy limits the definition of "water" to the five circumstances in subparagraphs (1) through (5). By doing so, the definition of "water," and therefore this exclusion, does not apply to water resulting from vandalism, a covered cause of loss. This definition must be strictly construed against Nationwide under Missouri law. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 383 (Mo. App. 1999).

30. The declination letter refers to the exclusion for "rupture or bursting of water pipes . . . ." *See* Exhibit B, p. 4. That exclusion reads as follows.

We will not pay for loss or damage caused by or resulting from:

b. Rupture or bursting of water pipes (other than Automatic Sprinkler Systems) unless caused by a Covered Cause of Loss.

*See* Exhibit A, p. 110.[5]

31. The pipes at issue neither ruptured nor burst. They were deliberately cut in an act of vandalism. And vandalism is a covered cause of loss under the Nationwide policy.

32. The declination letter refers to a vacancy permit endorsement that Nationwide claims preclude coverage. *See* Exhibit B, p. 4. That endorsement reads, in pertinent parts, as follows.

6. Vacancy

a. Description Of Terms

(2) Buildings under construction or renovation are not considered vacant.

---

[5] This page citation refers to the pdf page number. An alternative citation would be **CP 10 10 10 12**, p. 4.

*See* Exhibit A, p. 93.[6]

33.     The building was not vacant under the definition in Nationwide's policy because it was under construction or renovation.

34.     Nationwide is bound by the information acquired by its agent in taking an application and is assumed to have at least constructive notice of what the agent knows. *Bledsoe v. Farm Bureau Mut. Ins.*, 341 S.W.2d 626, 629 (Mo. App. 1960). When the agent knows that the insured building is not currently occupied or is unlikely to be occupied within the prescribed time, and issues a policy containing a vacancy provision, the insurer waives the insured's compliance with the provision. *Id.* The agent who obtained the policy at issue knew it would be under construction. That, plus the policy language cited above, is fatal to this endorsement.

35.     Mr. Kwitek and DVG Orien sent a letter to Nationwide on July 18, 2024, addressing all of the faulty reasons set forth in the declination letter and asking that Nationwide reconsider its position. *See* Exhibit C. Later that same day, Nationwide declined to reconsider its position.

## VII.   **Damages**

36.     As a direct and proximate result of Nationwide's acts and omissions, Mr. Kwitek and DVG Orien have suffered, and continue to suffer damages in excess of $25,000. They have incurred repair, cleanup, and remediation costs and expenses totaling $121,705.27 that should have been covered under the Nationwide policy.

---

[6] This page citation refers to the pdf page number. An alternative citation would be **CP 00 10 10 12**, p. 12.

Further, as a result of Nationwide's refusal to pay the claim, Mr. Kwitek and DVG Orien have been forced to retain counsel, who they have agreed to pay a reasonable fee for services rendered. Lastly, Mr. Kwitek and DVG Orien have incurred incidental and consequential damages.

37.     Certain claims here are made in the alternative.

## VIII.   <u>Count I: Breach of Contract</u>

38.     Mr. Kwitek and DVG Orien incorporate here ¶¶ 1-37.

39.     The Nationwide insurance policy attached as Exhibit A is a valid contract between Mr. Kwitek, DVG Orien, and Nationwide.

40.     Missouri law implies a duty of good faith and fair dealing in every contract. *See Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 410 (Mo. App. 1996); *Slone v. Purina Mills Inc.*, 927 S.W.2d 358, 368 (Mo. App. 1996).

41.     Mr. Kwitek and DVG Orien provided timely notice to Nationwide of its claims under the Nationwide policy.

42.     Mr. Kwitek and DVG Orien substantially performed or otherwise satisfied all conditions to bringing this action and obtaining insurance coverage under the Nationwide policy and applicable law. In the alternative, Mr. Kwitek and DVG Orien have been excused from performance by Nationwide's acts, representations, conduct, and/or omissions and moreover, by its conduct and actions, Nationwide has waived any such conditions or should be estopped from asserting them.

43.     As described above, Mr. Kwitek and DVG Orien have incurred, and continue to incur, losses, damages, and costs that are covered under the Nationwide policy.

44.     In breach of the policy, Nationwide refused or otherwise failed to recognize any coverage afforded for the losses, damages, and costs incurred by Mr. Kwitek and DVG Orien and further, refused to pay the claim.

45.     Mr. Kwitek and DVG Orien are entitled to breach of contract damages, including the full amounts owed under the policy, interest on the amount due under the policy, their costs and expenses incurred herein including reasonable attorney's fees and such further relief as this Court deems just and proper.

**IX.     Count II: Vexatious Refusal to Pay**

46.     Mr. Kwitek and DVG Orien incorporate here ¶¶ 1-45.

47.     Mr. Kwitek and DVG Orien timely and properly requested that Nationwide cover losses, damages, and costs under the Nationwide policy.

48.     Nationwide has willfully, unreasonably, and wrongfully refused to pay the claim.

49.     Nationwide has failed or refused for a period of over thirty days to make payment under, or in accordance with, the terms and provisions of the policy.

50.     Nationwide conducted an inadequate investigation, misapplied and misrepresented the policy terms, and ignored applicable law.

51.     Nationwide's refusal is vexatious and without reasonable cause.

52.    Mr. Kwitek and DVG Orien have sustained damages as a result of Nationwide's vexatious and unreasonable refusal.

53.    Pursuant to R.S.Mo. § 375.420 and R.S.Mo. § 375.296, Nationwide's refusal to pay the claim made by Mr. Kwitek and DVG Orien is without reasonable cause or excuse.

54.    As a direct and proximate result of Nationwide's vexatious conduct, Mr. Kwitek and DVG Orien have not been paid for the losses, damages, and cost that they have a right to recover under the Nationwide policy and are therefore entitled to statutory damages.

### Jury Demand

55.    Mr. Kwitek and DVG Orien request a trial by jury on all issues so triable.

### Prayer

WHEREFORE, Mr. Kwitek and DVG Orien seek judgment in their favor, and against Nationwide, as follows:

### Count I

a)    The entry of an award requiring Nationwide to pay Mr. Kwitek and DVG Orien all monetary damages suffered by Mr. Kwitek and DVG Orien caused by Nationwide's breaches of contract, including, without limitation, compensatory damages in an amount in excess of $25,000 to be determined by a jury at trial, incidental damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs; and

b)       Any such additional relief as the Court deems just and appropriate.

## Count II

a)       The entry of an award requiring Nationwide to pay all monetary damages suffered by Mr. Kwitek and DVG Orien caused by Nationwide's breaches of contract, including, without limitation, compensatory damages in an amount in excess of $25,000.00 (but not more than $74,000) to be determined by a jury at trial, for pre- and post-judgment interest on the amount due under the policy, for statutory vexatious damages of 20% of the first $1,500.00 and 10% in excess of $1,500.00, for reasonable attorneys' fees, for costs and expenses incurred herein; and

b)       Any such additional relief as this Court deems just and proper.

Dated: November 20, 2024

ROUSE FRETS WHITE GOSS GENTILE RHODES, P.C.

*/s/ Randall L. Rhodes*
Randall L. Rhodes  MO Bar #43211
5250 West 116th Place, Suite 400
Leawood, Kansas 66211
P: 913-387-1600
F: 913-928-6739
rrhodes@rousepc.com

Attorneys for plaintiffs

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| DAVE KWITEK, and | ) | |
| DVG ORIEN LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 2416-CV33260 |
| | ) | |
| NATIONWIDE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL**

Randall L. Rhodes of the law firm Rouse Frets White Goss Gentile Rhodes, P.C., hereby

enters his appearance as counsel for plaintiffs, Dave Kwitek and DVG ORIEN LLC. Randall L.

Rhodes is designated as lead attorney of record for plaintiffs, Dave Kwitek and DVG ORIEN

LLC.

Respectfully submitted,

ROUSE FRETS WHITE GOSS
GENTILE RHODES, P.C.

*/s/ Randall L. Rhodes*
Randall L. Rhodes, MO Bar #43211
5250 West 116th Place, Suite 400
Leawood, Kansas 66211
P: (913) 387-1600
F: (913) 928-6739
rrhodes@rousepc.com

*Attorneys for plaintiffs*

## <u>Certificate of Service</u>

      I certify that this pleading was electronically filed via Case.net on November 21, 2024 and Case.net will electronically notify and serve the pleading on all counsel of record.

<div align="right">

*/s/ Randall L. Rhodes*
*Attorney for plaintiffs*

</div>

# AFFIDAVIT OF SERVICE

**State of Missouri**                    **County of Jackson**                    **Circuit Court**

Case Number: 2416-CV33260

Plaintiff:
**Dave Kwitek**
vs.
Defendant:
**Nationwide Insurance Co of America**

POW2024015934

For: ROUSE FRETS WHITE GOSS GENTILE RHODES PC

Received by D & B Legal Service, LLC to be served on **Nationwide Insurance Company of America c/o CSC Lawyers Inc Service Co, 221 Bolivar Street, Jefferson City, MO 65101**. I, _Rufus R. Harmer_ , being duly sworn, depose and say that on the _22nd_ day of _Nov_ , 20_24_ at _2:25_p.m., executed service by delivering a true copy of the **Summons, Petition, Exhibits to Petition, Notice of Case Management Conference** in accordance with state statutes in the manner marked below:

(X) CORPORATE SERVICE: By serving _Shelly Lewis_ as
_Authorized Agent_ .

( ) CORPORATE SERVICE AT ALTERNATE ADDRESS: By serving _____ as
_____ at the alternate address of
_____.

( ) AUTHORIZED SERVICE: By serving _____ as
_____

( )NON SERVICE: For the reason detailed in the Comments below.

**COMMENTS:**_____
_____
_____
_____

Age _51_ Sex M (F) Race _white_ Height _5'6"_ Weight_white_ Hair _Brown_ Glasses (Y) N

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

_Rufus R. Harmer_

PROCESS SERVER # _____
Appointed in accordance with State Statutes

Subscribed and Sworn to before me on the _24th_ day
of _November_, _2024_ by the affiant who is
personally known to me.

_Kelsey Schrimpf_
NOTARY PUBLIC

KELSEY SCHRIMPF
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 23381805
My Commission Expires 08-14-2027

**D & B Legal Service, LLC**
**5350 W 94th Ter Ste 206**
**Prairie Village, KS 66207**
**(913) 362-8110**

Our Job Serial Number: 2024015934

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

Electronically Filed - JACKSON - KANSAS CITY - November 26, 2024 - 09:10 AM



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOEL P FAHNESTOCK | Case Number: 2416-CV33260 |
|---|---|
| Plaintiff/Petitioner:<br>DAVE KWITEK<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>RANDALL LEE RHODES<br>5250 W 116TH PL STE 400<br>LEAWOOD, KS 66211 |
| Defendant/Respondent:<br>NATIONWIDE INSURANCE COMPANY OF<br>AMERICA | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | <div align="right">(Date File Stamp)</div> |

## Summons in Civil Case

The State of Missouri to: **NATIONWIDE INSURANCE COMPANY OF AMERICA**
**Alias:**
**CSC LAWYERS INCORP SERVICE CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

# PRIVATE PROCESS SERVER

**COURT SEAL OF**

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

20-NOV-2024
Date

Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____ a person at least 18 years of age residing therein.

☒ (for service on a corporation) delivering a copy of the summons and petition to _Shelley Lewis_ (name) _Authorized Agent_ (title).

☐ other _____.

Served at _221 Bolivar St. Jefferson City Mo_ (address)

in _Cole_ (County/City of St. Louis), MO, on _11-22-24_ (date) at _2:25 p.m_ (time).

_Rufus R. Harmon_
Printed Name of Sheriff or Server

_Rufus R. Harmon_
Signature of Sheriff or Server

*(Seal)* **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _11-24-24_ (date).

My commission expires: _8-14-27_
Date

Notary Public

KELSEY SCHRIMPF
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 22381805
My Commission Expires 08-14-2027

| **Sheriff's Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 28 of 170



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>1 Nationwide Plz<br>Columbus, OH 43215-2226 |
| **Electronic copy provided to:** | Ashley Roberts |
| **Entity:** | Nationwide Insurance Company Of America<br>Entity ID Number  3286566 |
| **Entity Served:** | Nationwide Insurance Company of America |
| **Title of Action:** | Dave Kwitek, DVG Orien, LLC vs. Nationwide Insurance Company of America |
| **Matter Name/ID:** | Dave Kwitek, DVG Orien, LLC vs. Nationwide Insurance Company of America (16554680) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Jackson County Circuit Court, MO |
| **Case/Reference No:** | 2416-CV33260 |
| **Jurisdiction Served:** | Missouri |
| **Date Served on CSC:** | 11/22/2024 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Rouse Frets White Goss Gentile Rhodes, P.C.<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOEL P FAHNESTOCK | Case Number: **2416-CV33260** |
|---|---|
| Plaintiff/Petitioner:<br>DAVE KWITEK<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>RANDALL LEE RHODES<br>5250 W 116TH PL STE 400<br>LEAWOOD, KS 66211 |
| Defendant/Respondent:<br>NATIONWIDE INSURANCE COMPANY OF<br>AMERICA | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | |

(Date File Stamp)

## Summons in Civil Case

| The State of Missouri to: <u>NATIONWIDE INSURANCE COMPANY OF AMERICA</u> | |
|---|---|
| **Alias:**<br>CSC LAWYERS INCORP SERVICE CO<br>221 BOLIVAR STREET<br>JEFFERSON CITY, MO 65101 | **PRIVATE PROCESS SERVER** |

*COURT SEAL OF*

*JACKSON COUNTY*

      You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

<u>20-NOV-2024</u>
Date

_____
Clerk

Further Information:

---

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____ a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
   Printed Name of Sheriff or Server            Signature of Sheriff or Server

*(Seal)*    **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____    _____
                   Date               Notary Public

---

| **Sheriff's Fees** | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $ _____ ( ____ miles @ $. ____ per mile) |
| **Total** | $ _____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (11/2021) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 24-SMCC-12773  1 of 1        Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 30 of 170

# SUMMONS/GARNISHMENT SERVICE PACKETS
# ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made. Thank you.

<div align="center">Circuit Court of Jackson County</div>

6/2020

Electronically Filed - JACKSON - KANSAS CITY - November 20, 2024 - 10:21 AM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| DAVE KWITEK, | ) | **JURY TRIAL DEMANDED** |
| 362 Steeple Point Way, | ) | |
| Verona, Wisconsin 53593, | ) | |
| | ) | |
| DVG ORIEN LLC, | ) | |
| 362 Steeple Point Way, | ) | |
| Verona, Wisconsin 53593, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | Division: |
| NATIONWIDE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| **SERVE REGISTERED AGENT,** | ) | |
| CSC-LAWYERS Incorporating | ) | |
| Service Company, | ) | |
| 221 Bolivar Street, | ) | |
| Jefferson City, Missouri 65101, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' PETITION FOR DAMAGES

David Kwitek and DVG Orien LLC sue Nationwide Insurance Company of America and allege the following.

### I.   Nature of the Case

1.    David Kwitek and DVG Orien LLC paid Nationwide Insurance Company of America for Nationwide insurance policy CPS7985403. Mr. Kwitek and DVG Orien made a claim under that policy for what was clearly a covered loss. Nationwide wrongfully and vexatiously refused to pay that claim.

2.     Mr. Kwitek and DVG Orien seek damages from Nationwide for Nationwide's breach of contract and vexatious refusal to pay for covered losses under Nationwide insurance policy CPS7985403.

## II.   Parties

3.     Mr. Kwitek is an individual who resides in Verona, Wisconsin.

4.     DVG Orien is a Missouri LLC with a principal place of business in Verona, Wisconsin.

5.     Nationwide is a foreign corporation with a principal place of business in Des Moines, Iowa. At all relevant times, Nationwide was doing business in Missouri. Nationwide sold policy number CPS7985403 to Mr. Kwitek and DVG Orien for the period April 27, 2024 through July 27, 2024. A copy of the policy is Exhibit A.

## III.   Jurisdiction and Venue

6.     This Court has subject matter jurisdiction over the case and jurisdiction to grant all the relief requested by Mr. Kwitek and DVG Orien.

7.     The Court has jurisdiction over Nationwide because it is registered to do business in Missouri and has consistent commercial interactions in Missouri, including, but not limited to entering into Nationwide policy number CPS7985403.

8.     Venue is proper in this Court under R.S.Mo. § 508.010 and because Nationwide conducts business in Jackson County, Missouri.

## IV.   Factual Background

9.     Mr. Kwitek and DVG Orien performed and oversaw certain renovation work on a building located at 8500 Ward Parkway in Kansas City Missouri.

Electronically Filed - JACKSON - KANSAS CITY - November 20, 2024 - 10:21 AM

10. Before starting the renovation work, Mr. Kwitek and DVG Orien obtained Nationwide policy number CPS7985403 to cover the work on the project.[1] All premiums were timely paid and the policy was in effect on June 14, 2024. Mr. Kwitek and DVG Orien are named insureds under the policy.

| COMMON POLICY DECLARATIONS | | |
|---|---|---|
| NEW | Underwritten by: Scottsdale Insurance Company<br>Home Office:<br>One Nationwide Plaza • Columbus, Ohio 43215<br>Administrative Office:<br>18700 North Hayden Road • Scottsdale, Arizona 85255<br>1-800-423-7675 • A Stock Company | **Policy Number**<br>CPS7985403 |

**ITEM 1. NAMED INSURED AND MAILING ADDRESS**

DAVID KWITEK, DVG ORIEN LLC
*See Named Insured Schedule
362 STEEPLE POINT WAY
VERONA WI 53593

NO FLAT CANCELLATION

AGENT NAME AND ADDRESS
AMWINS ACCESS INSURANCE (WAUKESHA, WI) 20975
SWENSON DR WAUKESHA WI 53186

Agent No.: 48010          Program No.:    76

| ITEM 2. POLICY PERIOD | From: 04/27/2024 | To: 07/27/2024 | Term: 91 |
|---|---|---|---|

12:01 A.M., Standard Time at the mailing address shown in ITEM 1.

## SCOTTSDALE INSURANCE COMPANY®

### SCHEDULE OF NAMED INSUREDS

Policy No: CPS7985403                    Effective Date 04/27/2024
                                          12:01 A.M. Standard Time

Named Insured  DAVID KWITEK, DVG ORIEN LLC          Agent No. 48010

DAVID KWITEK, DVG ORIEN LLC

11. On June 14, 2024, an ATM vendor reported to Mr. Kwitek that an ATM in the building lost power. An electrician from Tann Electric was called and sent to

---

[1] The Nationwide policy was underwritten by Scottsdale Insurance Company. Scottsdale is part of Nationwide's "group of companies." E&S/Specialty: About Us - Nationwide

3

the building. Upon arrival, the electrician discovered a large amount of water in the building.

12.   A plumbing technician from KB Complete was sent to the building. Upon arrival at the building and assessing the situation, the KB Complete technician called American Water Damage, a mitigation contractor, to the scene.

13.   After the main water valve was turned off in the building, two leaks were located. The first was in a lower-level utility room. The second was on the second floor.

14.   Despite turning off the main water valve, water continued to leak into the building.

15.   Several calls were made to the water utility to have the water to the building shut off. A technician from the water utility shut off the water to the building later that same day.

16.   American Water Damage began removing excess water from the building after the water to the building was shut off that same day.

17.   In the days following, an inspection by employees of KB Complete determined there were three leaks. Water pipes had been vandalized. The pipes were cut with a power saw.

18.   A police report was filed documenting the vandalism.

19.   The flooding water caused considerable damage to the building, including, but not limited to, damage to certain electrical components in the building.

4

20. Nationwide was timely put on notice of the event, the losses, and the claim under the Nationwide policy.

21. Mr. Kwitek and DVG Orien fully cooperated with Nationwide, timely providing Nationwide with everything it asked for, including, but not limited to the police report, documents relating to the damages, and cost of mitigation and repair documents.

22. In a letter dated July 9, 2024, Nationwide declined to cover the loss. Nationwide contended in that letter that "[w]ater discharge, and vandalism are not covered causes of loss under the policy." A copy of the declination letter is Exhibit B.

23. To date, Mr. Kwitek and DVG Orien have satisfied all relevant and applicable conditions precedent to obtaining payments owed under the Nationwide policy to the extent they have not been waived or abrogated by Nationwide's conduct, omissions, actions, or breaches.

## V. **Pertinent Policy Provisions**

24. The policy covers property damage.

SECTION I – COVERAGES
COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or **"property damage"** to which this insurance applies.

17. "Property damage" means:

a. **Physical injury to tangible property**, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See* Exhibit A, pp. 21 and 35.[2]

25.     "Vandalism, meaning willful and malicious damage to, or destruction of, the described property" is a covered cause of loss under the Nationwide policy. *Id.*, p. 107.[3]

## VI.     Nationwide's Improper Denial

26.     In her July 9, 2024 denial letter, Haley Moegenburg, a Claim Specialist II for Nationwide E&S/Specialty wrote the following:

> The policy provides coverage for direct physical loss or damage to covered property caused by the covered causes of loss listed above. No damage from any covered cause of loss was reported. Vandalism, water discharge, wear and tear, and deterioration are not covered causes of loss. Additionally, the policy excludes from coverage damage caused by rupture or bursting of pipes and discharge of water from a system containing water. Therefore, no coverage is provided for the plumbing repair or water damages. Furthermore, no coverage is provided for mold, if any is discovered, because damage caused by mold is generally excluded from coverage and the damage was not caused by a covered cause of loss.
>
> Unfortunately, we will not be able to make any payment.

*See* Exhibit B, p. 4.

---

[2] This page citation refers to the pdf page number. An alternative citation would be **CG 00 01 04 13** pp. 1 and 15.

[3] This page citation refers to the pdf page number. An alternative citation would be **CP 10 10 10 12**, p. 1.

27.     The denial letter misstates and misinterprets the Nationwide policy.

28.     The declination letter refers to "water." The "water" exclusion appears in ¶ B.1.g on page 109 of the policy. *See* Exhibit A, p. 109.[4] It reads as follows.

g. Water

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;
(b) Basements, whether paved or not; or
(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

*Id.*

---

[4] This page citation refers to the pdf page number. An alternative citation would be **CP 10 10 10 12**, p. 3.

29.     The policy limits the definition of "water" to the five circumstances in subparagraphs (1) through (5). By doing so, the definition of "water," and therefore this exclusion, does not apply to water resulting from vandalism, a covered cause of loss. This definition must be strictly construed against Nationwide under Missouri law. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 383 (Mo. App. 1999).

30.     The declination letter refers to the exclusion for "rupture or bursting of water pipes . . . ." *See* Exhibit B, p. 4. That exclusion reads as follows.

We will not pay for loss or damage caused by or resulting from:

b. Rupture or bursting of water pipes (other than Automatic Sprinkler Systems) unless caused by a Covered Cause of Loss.

*See* Exhibit A, p. 110.[5]

31.     The pipes at issue neither ruptured nor burst. They were deliberately cut in an act of vandalism. And vandalism is a covered cause of loss under the Nationwide policy.

32.     The declination letter refers to a vacancy permit endorsement that Nationwide claims preclude coverage. *See* Exhibit B, p. 4. That endorsement reads, in pertinent parts, as follows.

6. Vacancy

a. Description Of Terms

(2) Buildings under construction or renovation are not considered vacant.

---

[5] This page citation refers to the pdf page number. An alternative citation would be **CP 10 10 10 12**, p. 4.

*See* Exhibit A, p. 93.[6]

33.     The building was not vacant under the definition in Nationwide's policy because it was under construction or renovation.

34.     Nationwide is bound by the information acquired by its agent in taking an application and is assumed to have at least constructive notice of what the agent knows. *Bledsoe v. Farm Bureau Mut. Ins.*, 341 S.W.2d 626, 629 (Mo. App. 1960). When the agent knows that the insured building is not currently occupied or is unlikely to be occupied within the prescribed time, and issues a policy containing a vacancy provision, the insurer waives the insured's compliance with the provision. *Id.* The agent who obtained the policy at issue knew it would be under construction. That, plus the policy language cited above, is fatal to this endorsement.

35.     Mr. Kwitek and DVG Orien sent a letter to Nationwide on July 18, 2024, addressing all of the faulty reasons set forth in the declination letter and asking that Nationwide reconsider its position. *See* Exhibit C. Later that same day, Nationwide declined to reconsider its position.

## VII.   **Damages**

36.     As a direct and proximate result of Nationwide's acts and omissions, Mr. Kwitek and DVG Orien have suffered, and continue to suffer damages in excess of $25,000. They have incurred repair, cleanup, and remediation costs and expenses totaling $121,705.27 that should have been covered under the Nationwide policy.

---

[6] This page citation refers to the pdf page number. An alternative citation would be **CP 00 10 10 12**, p. 12.

Further, as a result of Nationwide's refusal to pay the claim, Mr. Kwitek and DVG Orien have been forced to retain counsel, who they have agreed to pay a reasonable fee for services rendered. Lastly, Mr. Kwitek and DVG Orien have incurred incidental and consequential damages.

37.    Certain claims here are made in the alternative.

## VIII.  Count I: Breach of Contract

38.    Mr. Kwitek and DVG Orien incorporate here ¶¶ 1-37.

39.    The Nationwide insurance policy attached as Exhibit A is a valid contract between Mr. Kwitek, DVG Orien, and Nationwide.

40.    Missouri law implies a duty of good faith and fair dealing in every contract. *See Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 410 (Mo. App. 1996); *Slone v. Purina Mills Inc.*, 927 S.W.2d 358, 368 (Mo. App. 1996).

41.    Mr. Kwitek and DVG Orien provided timely notice to Nationwide of its claims under the Nationwide policy.

42.    Mr. Kwitek and DVG Orien substantially performed or otherwise satisfied all conditions to bringing this action and obtaining insurance coverage under the Nationwide policy and applicable law. In the alternative, Mr. Kwitek and DVG Orien have been excused from performance by Nationwide's acts, representations, conduct, and/or omissions and moreover, by its conduct and actions, Nationwide has waived any such conditions or should be estopped from asserting them.

10

43.     As described above, Mr. Kwitek and DVG Orien have incurred, and continue to incur, losses, damages, and costs that are covered under the Nationwide policy.

44.     In breach of the policy, Nationwide refused or otherwise failed to recognize any coverage afforded for the losses, damages, and costs incurred by Mr. Kwitek and DVG Orien and further, refused to pay the claim.

45.     Mr. Kwitek and DVG Orien are entitled to breach of contract damages, including the full amounts owed under the policy, interest on the amount due under the policy, their costs and expenses incurred herein including reasonable attorney's fees and such further relief as this Court deems just and proper.

## IX.     Count II: Vexatious Refusal to Pay

46.     Mr. Kwitek and DVG Orien incorporate here ¶¶ 1-45.

47.     Mr. Kwitek and DVG Orien timely and properly requested that Nationwide cover losses, damages, and costs under the Nationwide policy.

48.     Nationwide has willfully, unreasonably, and wrongfully refused to pay the claim.

49.     Nationwide has failed or refused for a period of over thirty days to make payment under, or in accordance with, the terms and provisions of the policy.

50.     Nationwide conducted an inadequate investigation, misapplied and misrepresented the policy terms, and ignored applicable law.

51.     Nationwide's refusal is vexatious and without reasonable cause.

11

52.    Mr. Kwitek and DVG Orien have sustained damages as a result of Nationwide's vexatious and unreasonable refusal.

53.    Pursuant to R.S.Mo. § 375.420 and R.S.Mo. § 375.296, Nationwide's refusal to pay the claim made by Mr. Kwitek and DVG Orien is without reasonable cause or excuse.

54.    As a direct and proximate result of Nationwide's vexatious conduct, Mr. Kwitek and DVG Orien have not been paid for the losses, damages, and cost that they have a right to recover under the Nationwide policy and are therefore entitled to statutory damages.

## Jury Demand

55.    Mr. Kwitek and DVG Orien request a trial by jury on all issues so triable.

## Prayer

WHEREFORE, Mr. Kwitek and DVG Orien seek judgment in their favor, and against Nationwide, as follows:

## Count I

a)    The entry of an award requiring Nationwide to pay Mr. Kwitek and DVG Orien all monetary damages suffered by Mr. Kwitek and DVG Orien caused by Nationwide's breaches of contract, including, without limitation, compensatory damages in an amount in excess of $25,000 to be determined by a jury at trial, incidental damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs; and

12

b)  Any such additional relief as the Court deems just and appropriate.

## Count II

a)  The entry of an award requiring Nationwide to pay all monetary damages suffered by Mr. Kwitek and DVG Orien caused by Nationwide's breaches of contract, including, without limitation, compensatory damages in an amount in excess of $25,000.00 (but not more than $74,000) to be determined by a jury at trial, for pre- and post-judgment interest on the amount due under the policy, for statutory vexatious damages of 20% of the first $1,500.00 and 10% in excess of $1,500.00, for reasonable attorneys' fees, for costs and expenses incurred herein; and

b)  Any such additional relief as this Court deems just and proper.

Dated: November 20, 2024

ROUSE FRETS WHITE GOSS GENTILE RHODES, P.C.

*/s/ Randall L. Rhodes*
Randall L. Rhodes  MO Bar #43211
5250 West 116th Place, Suite 400
Leawood, Kansas 66211
P: 913-387-1600
F: 913-928-6739
rrhodes@rousepc.com

Attorneys for plaintiffs

13



**Nationwide®**

**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
| --- |
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com. <br> In order to expedite this process, please be prepared to furnish as much of the following information as possible: <br> • Your policy number <br> • Date, time and location of the loss/accident <br> • Details of the loss/accident <br> • Name, address and phone number of any involved parties <br> • If applicable, name of law enforcement agency or fire department along with the incident number <br> **Please refer to your policy for specific claim reporting requirements.** |

EXHIBIT

**Ex A**

NOTX0178CW (3-16)



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary

President

The information contained herein replaces any similar information contained elsewhere in the policy.

## COMMON POLICY DECLARATIONS

| | |
|---|---|
| NEW | Underwritten by: Scottsdale Insurance Company<br>Home Office:<br>One Nationwide Plaza • Columbus, Ohio 43215<br>Administrative Office:<br>18700 North Hayden Road • Scottsdale, Arizona 85255<br>1-800-423-7675 • A Stock Company |

**Policy Number**

**CPS7985403**

**ITEM 1.** NAMED INSURED AND MAILING ADDRESS

DAVID KWITEK, DVG ORIEN LLC
*See Named Insured Schedule
362 STEEPLE POINT WAY
VERONA WI 53593

NO FLAT CANCELLATION

AGENT NAME AND ADDRESS

AMWINS ACCESS INSURANCE (WAUKESHA, WI) 20975
SWENSON DR WAUKESHA WI 53186

Agent No.: 48010          Program No.: 76

| **ITEM 2.** POLICY PERIOD | From: 04/27/2024 | To: 07/27/2024 | Term: 91 |
|---|---|---|---|

**12:01 A.M., Standard Time at the mailing address shown in ITEM 1.**

Business Description: LESSOR OF BUILDINGS - ALL CONTAIN BEAUTY SCHOOLS HE OWNS UNDER SEPERATE

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium Summary | |
|---|---|---|
| Commercial General Liability Coverage Part | $ | $420 MP |
| Commercial Property Coverage Part | $ | $2,356 |
| Commercial Crime And Fidelity Coverage Part | $ | NOT COVERED |
| Commercial Inland Marine Coverage Part | $ | NOT COVERED |
| Commercial Auto Coverage Part | $ | NOT COVERED |
| Professional Liability Coverage Part | $ | NOT COVERED |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| **Total Policy Premium** | $ | 2,776.00 |
| TOTAL TAXES AND FEES | $ | 212.03 |
| | $ | |
| **Policy Total** | $ | 2,988.03 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

AMWINS ACCESS INSURANCE (WAUKESHA, WI)
20975 SWENSON DR
WAUKESHA WI 53186
04/30/2024 - MB/DM

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S)
AND ENDORSEMENT(S), IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY.

OPS-D-1-0117 (01-21)

 Nationwide®



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF TAXES, SURCHARGES OR FEES

Policy No. CPS7985403

Effective Date: 04/27/2024
12:01 A.M., Standard Time

Named Insured   DAVID KWITEK, DVG ORIEN LLC

Agent No. 48010

| | |
|---|---:|
| AMWINS SERVICE FEE | 125.00 |
| SURPLUS LINES TAX | 87.03 |
| TOTAL TAXES, SURCHARGES OR FEES: | ·212.03 |

This insurance contract is with an insurer which has not obtained a certificate of authority to transact a regular insurance business in the state of Wisconsin, and is issued and delivered as a surplus lines coverage pursuant to s. 618.41 of the Wisconsin Statutes. Section 618.43(1), Wisconsin Statutes, requires payment by the policyholder of 3% tax on gross premium.

Surplus Lines Licensee:
  Name: Michael Kroll
  Address: 21550 Oxnard St Suite 1100
           Woodland Hills, CA 91367

UTS-126L 10-93



## SCOTTSDALE INSURANCE COMPANY®

### SCHEDULE OF NAMED INSUREDS

Policy No. CPS7985403          Effective Date 04/27/2024

12:01 A.M. Standard Time

Named Insured DAVID KWITEK, DVG ORIEN LLC          Agent No. 48010

---

DAVID KWITEK, DVG ORIEN LLC

---

UTS-SP-1 (8-96)



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No.  CPS7985403                          Effective Date  04/27/2024

12:01 A.M. Standard Time

Named Insured   DAVID KWITEK, DVG ORIEN LLC          Agent No.  48010

---

**COMMON POLICY**

| | | |
|---|---|---|
| NOTX0178CW | 03-16 | CLAIM REPORTING INFORMATION |
| NOTX0423CW | 12-20 | POLICYHOLDER DISCLOSURE - NOTICE OF TERRORISM INSURANCE COVERAGE |
| UTS-COVPG | 03-21 | COVER PAGE |
| OPS-D-1-0117 | 01-21 | COMMON POLICY DECLARATIONS |
| UTS-126L | 10-93 | SCHEDULE OF TAXES, SURCHARGES OR FEES |
| UTS-SP-1 | 08-96 | SCHEDULE OF NAMED INSUREDS |
| UTS-SP-2 | 12-95 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| UTS-SP-3 | 08-96 | SCHEDULE OF LOCATIONS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 09 85 | 12-20 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| IL 09 86 | 01-15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL TERRORISM; CAP ON COVERED CERTIFIED ACTS LOSSES |
| UTS-490 | 11-18 | TOTAL OR CONSTRUCTIVE TOTAL LOSS PROVISION |
| UTS-496 | 06-19 | MINIMUM EARNED CANCELLATION PREMIUM |
| UTS-605 | 06-23 | EXCLUSION OF COSMETIC DAMAGE TO ROOF SURFACING |
| UTS-9g | 06-22 | SERVICE OF SUIT CLAUSE |

**COMMERCIAL LIABILITY**

| | | |
|---|---|---|
| CLS-SD-1L | 08-01 | COMMERCIAL GENERAL LIABILITY COVERAGE PART SUPPLEMENTAL DECLARATIONS |
| CLS-SP-1L | 10-93 | COMMERCIAL GENERAL LIABILITY COVERAGE PART EXTENSION OF SUPPLEMENTAL DECLARATIONS |
| CG 00 01 | 04-13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 21 04 | 11-85 | EXCLUSION-PRODUCTS-COMPLETED OPERATIONS HAZARD |
| CG 21 06 | 05-14 | EXCLUSION-ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY-WITH LIMITED BODILY INJURY EXCEPTION |
| CG 21 39 | 10-93 | CONTRACTUAL LIABILITY LIMITATION |
| CG 21 44 | 04-17 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 | 09-99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |



## SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. CPS7985403     Effective Date 04/27/2024

<div align="right">12:01 A.M. Standard Time</div>

Named Insured DAVID KWITEK, DVG ORIEN LLC     Agent No. 48010

---

### COMMERCIAL LIABILITY

| | | |
|---|---|---|
| CG 21 67 | 12-04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 76 | 01-15 | EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM |
| CG 21 84 | 01-15 | EXCLUSION OF CERTIFIED NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG 24 26 | 04-13 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 40 12 | 12-19 | EXCLUSION - ALL HAZARDS IN CONNECTION WITH AN ELECTRONIC SMOKING DEVICE, ITS VAPOR, COMPONENT PARTS, EQUIPMENT AND ACCESSORIES |
| CG 40 15 | 12-20 | CANNABIS EXCLUSION WITH HEMP EXCEPTION |
| GLS-100s | 06-13 | EXCLUSION-CONTRACTORS AND SUBCONTRACTORS |
| GLS-152s | 08-16 | AMENDMENT TO OTHER INSURANCE CONDITION |
| GLS-278s | 01-06 | INJURY TO WORKER EXCLUSION |
| GLS-289s | 11-07 | KNOWN INJURY OR DAMAGE EXCLUSION-PERSONAL AND ADVERTISING INJURY |
| GLS-341s | 08-12 | HYDRAULIC FRACTURING EXCLUSION |
| GLS-457s | 10-14 | AIRCRAFT EXCLUSION |
| GLS-47s | 10-07 | MINIMUM AND ADVANCE PREMIUM ENDORSEMENT |
| GLS-666 | 06-22 | PFC/PFAS EXCLUSION |
| GLS-690 | 03-23 | EXCLUSION—TOTAL AIRCRAFT, AUTO OR WATERCRAFT WITH LIMITED EXCEPTIONS |
| GLS-74s | 09-05 | AMENDMENT OF CONDITIONS |
| GLS-94s | 06-15 | BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT (PER CLAIMANT) |
| UTS-365s | 02-09 | AMENDMENT OF NONPAYMENT CANCELLATION CONDITION |
| UTS-428g | 11-12 | PREMIUM AUDIT |
| UTS-611 | 07-22 | EXCLUSION—BIOMETRIC INFORMATION |
| UTS-632 | 03-23 | EXCLUSION-DESIGNATED CHEMICALS, COMPOUNDS, ENERGY, MATERIAL OR SUBSTANCES |
| UTS-74g | 08-95 | PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION |

### COMMERCIAL PROPERTY

| | | |
|---|---|---|
| CPS-SD-1-0219 | 01-21 | COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL DECLARATIONS |

UTS-SP-2 (12-95)



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. CPS7985403      Effective Date 04/27/2024

12:01 A.M. Standard Time

Named Insured   DAVID KWITEK, DVG ORIEN LLC     Agent No. 48010

| **COMMERCIAL PROPERTY** | | |
|---|---|---|
| CP 00 10 | 10-12 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| CP 00 90 | 07-88 | COMMERCIAL PROPERTY CONDITIONS |
| CFS-59s | 05-18 | SECURED PREMISES WARRANTY |
| CFS-63s | 08-14 | VANDALISM SUBLIMIT |
| CP 01 40 | 07-06 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| CP 02 99 | 06-07 | CANCELLATION CHANGES |
| CP 04 11 | 09-17 | PROTECTIVE SAFEGUARDS |
| CP 04 50 | 07-88 | VACANCY PERMIT |
| CP 10 10 | 10-12 | CAUSES OF LOSS-BASIC FORM |
| CP 10 75 | 12-20 | CYBER INCIDENT EXCLUSION |

UTS-SP-2 (12-95)



## SCOTTSDALE INSURANCE COMPANY®

### SCHEDULE OF LOCATIONS

Policy No.   CPS7985403                              Effective Date   04/27/2024

12:01 A.M. Standard Time

Named Insured   DAVID KWITEK, DVG ORIEN LLC        Agent No.   48010

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|-----------|-----------|------------------------------------------------------|-----------|
| 1 | | 362 STEEPLE POINT WAY   VERONA WI 53593 | See Liability Dec(s) |
| 1 | 1 | 362 STEEPLE POINT WAY   VERONA WI 53593 | VACANT BUILDING |

UTS-SP-3 08-96

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)**    **$**   132 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| COMMERCIAL GENERAL LIABILITY COVERAGE<br>COMMERCIAL PROPERTY COVERAGE PART |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
|---|
| **Federal share of terrorism losses**    **80**   **%**<br>(Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL TERRORISM; CAP ON COVERED CERTIFIED ACTS LOSSES

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    STANDARD PROPERTY POLICY

## SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| WI | COMMERCIAL PROPERTY COVERAGE PART |
|  |  |
|  |  |
|  |  |
|  |  |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

  **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

  **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**LIMITED EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the terrorism was to release such material; or

3. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical material; or

4. Pathogenic or poisonous biological or chemical material is released, and it appears that one purpose of the terrorism was to release such material.

When this terrorism exclusion applies in accordance with the terms of Paragraph **B.1.** or **B.2.**, the terrorism exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Part or Policy.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" excluded under Paragraph **B.** results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**D. Cap On Certified Terrorism Losses**

The following limitation applies to coverage for any one or more "certified acts of terrorism" that are not excluded by the terms of the exclusion in Paragraph **B.** and to any loss or damage that is covered and to which the exception in Paragraph **C.** applies:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

This Paragraph, **D.**, does not apply to insurance provided under the Crime And Fidelity Coverage Part.

**E. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the non-applicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the War And Military Action Exclusion.

© Insurance Services Office, Inc., 2015

Underwritten by Scottsdale Insurance Company

# ENDORSEMENT
# NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL OR CONSTRUCTIVE TOTAL LOSS PROVISION

It is understood and agreed that in the event of a total loss or constructive total loss under this policy, one hundred percent (100%) of the premium associated with the covered property that sustains the total loss or constructive total loss shall be earned in full and no return premium shall be due to the named insured.

_____     _____
AUTHORIZED REPRESENTATIVE                              DATE



Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than _____ 25% _____ of the premium.

_____ /

AUTHORIZED REPRESENTATIVE                    DATE

Nationwide®

Underwritten by Scottsdale Insurance Company

## ENDORSEMENT
## NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF COSMETIC DAMAGE TO ROOF SURFACING

### SCHEDULE

| Premises Address | Description Of Building Or Structure |
|---|---|
| 362 STEEPLE POINT WAY VERONA WI 53593 | LESSOR OF BUILDINGS - ALL CONTAIN BEAUTY SCHOOLS HE OWNS UNDER SEPERATE |
| | |
| | |

This exclusion applies to all buildings or structures described in the Schedule above. If the Schedule is left blank, then this exclusion applies to all buildings or structures shown in the Declarations.

This insurance does not apply to "cosmetic loss or damage" to "roof surfacing."

Unless otherwise excluded elsewhere in this policy, we do cover windstorm or hail damage to "roof surfacing" that results in damage that allows the penetration of rain, hail, snow, ice or melting hail, snow or ice through the "roof surfacing" or that results in the failure of the "roof surfacing" to perform its intended function to keep out the elements.

For the purposes of this endorsement, the following definitions apply:

"Cosmetic loss or damage" means damage that alters the physical appearance of the "roof surfacing" or results in cracks, chipping or displacement of roof tiles but does not result in damage that allows the penetration of rain, hail, snow, ice or melting hail, snow or ice through "roof surfacing" or does not result in the failure of the "roof surfacing" to perform its intended function to keep out the elements.

"Roof surfacing" means the shingles, tiles, cladding, roof vents, vent type covers, metal or synthetic sheeting, metal components or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

**All other terms and conditions of this policy remain unchanged.**

_____     _____/_____
AUTHORIZED REPRESENTATIVE                              DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

 Nationwide®

Underwritten by Scottsdale Insurance Company

# ENDORSEMENT
# NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the court. In a suit instituted against it under this contract, the Company agrees to abide by the final decision of the court or of any appellate court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of the Company's right to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision therefor, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The person named below is authorized and directed to accept service of process on behalf of the Company:

COMMISSIONER OF INSURANCE

P. O. BOX 7872

MADISON, WI 53707-7873

Having accepted service of process on behalf of the Company, the person designated above is authorized to mail the process or a true copy to:

NOT REQUIRED

_____/_____
AUTHORIZED REPRESENTATIVE                    DATE

UTS-9g (06-22)                    Page 1 of 1

**Nationwide**


SCOTTSDALE INSURANCE COMPANY®

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. CPS7985403      Effective Date 04/27/2024

                                                12:01 A.M., Standard Time

Named Insured DAVID KWITEK, DVG ORIEN LLC      Agent No. 48010

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $ Excluded | Products/Completed Operations Aggregate |
| | $ 2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A—Bodily Injury and Property Damage Liability | $ 1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage to Premises Rented to You Limit | $ 100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B—Personal and Advertising Injury Liability | $ 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C—Medical Payments | | any one person subject to the Coverage A occurrence and the General Aggregate Limits $ 5,000 |

**Item 2.** Description of Business

Form of Business:

     ❑ Individual        ❑ Partnership ❑ Joint Venture      ❑ Trust      ☒ Limited Liability Company

     ❑ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:
SEE SCHEDULE OF LOCATIONS

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | $420 MP |
| Other Premium: | $ | |
| Total Premium: | $ | $420 MP |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

CLS-SD-1L (8-01)



# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. CPS7985403

Effective Date: 04/27/2024
12:01 A.M., Standard Time

Named Insured DAVID KWITEK, DVG ORIEN LLC

Agent No. 48010

| Prem. No. 1 | Bldg. No. 1 | Class Code 68606 | Exposure 11,696 | Basis PER 1000 SQ FT/AREA | |
|---|---|---|---|---|---|
| Class Description: VACANT BUILDINGS - NOT FACTORIES - OTHER THAN NOT-FOR-PROFIT  + PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | $16.00 | $47 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |
| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
| Class Description: | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |
| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
| Class Description: | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |
| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
| Class Description: | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

CLS-SP-1L (10-93)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 65 of 170

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

    **(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

    **(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 66 of 170

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 68 of 170

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 69 of 170

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 70 of 170

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-related

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### p. Recording And Distribution Of Material Or Information In Violation Of Law

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 73 of 170

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 81 of 170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 82 of 170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINI-TIONS Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| |
|---|
| **Premises:**<br>362 STEEPLE POINT WAY VERONA WI 53593 |
| **Project Or Operation:**<br>LESSOR OF BUILDINGS - ALL CONTAIN BEAUTY SCHOOLS HE OWNS UNDER SEPERATE |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

1. Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

   **(1)** The "bodily injury" or "property damage":

   **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

   **(b)** Arises out of the project or operation shown in the Schedule;

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

2. Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

   **b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

   **(1)** The offense arises out of your business:

   **(a)** Performed on the premises shown in the Schedule; or

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 84 of 170

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02**, the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

© Insurance Services Office, Inc., 2016

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 85 of 170

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 89 of 170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES
# RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

 © Insurance Services Office, Inc., 2015

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 91 of 170

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© Insurance Services Office, Inc., 2012

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 93 of 170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ALL HAZARDS IN CONNECTION WITH AN ELECTRONIC SMOKING DEVICE, ITS VAPOR, COMPONENT PARTS, EQUIPMENT AND ACCESSORIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**Electronic Smoking Device**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the following:

**1.** The design, manufacture, distribution, sale, maintenance, use or repair of:

    **a.** An "electronic smoking device"; or

    **b.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to, a mouthpiece, tube, tank, connector, atomizer, cartomizer, clearomizer, coil, battery, charger, cartridge, liquid, flavoring, solutions of any kind, or ingredients therein;

**2.** The actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device"; or

**3.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to those items listed in Paragraph **A.1.b.** of this endorsement, and in connection with the actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device".

**B.** The following definition is added:

"Electronic smoking device" means a battery-powered device that delivers a vaporized inhalable substance through a mouthpiece. "Electronic smoking devices" include, but are not limited to, battery-powered:

**1.** Cigarettes;

**2.** Pipes;

**3.** Cigars;

**4.** Hookahs; and

**5.** Vaporizers, other than steam or mist inhalers.

Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 94 of 170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION WITH HEMP EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible;

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of goods or products containing or derived from hemp, including, but not limited to:

**a.** Seeds;

**b.** Food;

**c.** Clothing;

**d.** Lotions, oils or extracts;

**e.** Building materials; or

**f.** Paper.

**2.** "Property damage" to goods or products described in Paragraph **B.1.** above.

However, Paragraphs **B.1.** and **B.2.** above do not apply to the extent any such goods or products are prohibited under an applicable state or local statute, regulation or ordinance in the state wherein:

**(1)** The "bodily injury" or "property damage" occurs;

**(2)** The "occurrence" which caused the "bodily injury" or "property damage" takes place; or

**(3)** The offense which caused the "personal and advertising injury" was committed.

**3.** "Personal and advertising injury" arising out of the following offenses:

**a.** False arrest, detention or imprisonment; or

**b.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

© Insurance Services Office, Inc., 2020

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, by-product, extract, derivative, mixture or combination, such as:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

 © Insurance Services Office, Inc., 2020

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 96 of 170

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT
NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION—CONTRACTORS AND SUBCONTRACTORS

This endorsement modifies insurance under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to **SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY,** paragraph **2. Exclusions:**

This insurance does not apply to "bodily injury," "property damage," or "personal or advertising injury" arising out of or caused by, in whole or in part:

**a.** Operations performed for or on behalf of any insured by any contractor or subcontractor;

**b.** Acts or omissions of any contractor or subcontractor in connection with **a.** above; or

**c.** The negligent:

    **(1)** Hiring;

    **(2)** Investigation;

    **(3)** Supervision;

    **(4)** Training; or

    **(5)** Retention

of any contractor or subcontractor for whom any insured is or ever was legally responsible and whose operations, acts or omissions would be excluded by **a.** or **b.** above.

This exclusion applies to all sums you become legally obligated to pay that arise out of any claims or "suits" by any person or organization for "bodily injury," "property damage," or "personal or advertising injury" and/or any obligation to share damages with or repay someone else who must pay damages because of the "bodily injury," "property damage," or "personal or advertising injury."

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to **a. b.** or **c.** above.

_____     _____

AUTHORIZED REPRESENTATIVE                                    DATE

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 97 of 170



**SCOTTSDALE INSURANCE COMPANY®**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Condition **4. Other Insurance** of **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4. Other Insurance**

**a. Primary Insurance**

This insurance is primary except when **b.** below applies.

**b. Excess Insurance**

**(1)** This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(d)** If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage **A (SECTION I)**; or

**(e)** That is valid and collectible insurance available to any insured under any other policy.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 98 of 170

**(b)** The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____  /  _____

AUTHORIZED REPRESENTATIVE                        DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INJURY TO WORKER EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

With respect to this endorsement, paragraph **e. Employer's Liability** of subsection **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by:

**e. Employer's Liability**

"Bodily injury" to:

    **(1)** An "employee" of the insured arising out of and in the course of:

        **(a)** Employment by the insured; or

        **(b)** Performing duties related to the conduct of the insured's business; or

    **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

    **(1)** Whether the insured may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

The following is added to **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** subsection **2. Exclusions** of the policy.

This insurance does not apply to:

    **1.** "Bodily injury" to:

    **a.** An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;

    **b.** Any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured; or

    **c.** Any employee or anyone directly or indirectly employed by such contractor, subcontractor or sub-subcontractor or anyone for whose acts such contractor, subcontractor or sub-subcontractor may be liable

if such "bodily injury" arises out of and in the course of their employment or retention of such contractor, subcontractor or sub-subcontractor, regardless of whether or not it is caused in part by you; or

    **2.** Any obligation of any insured to defend, indemnify or contribute with another because of "bodily injury" to:

    **a.** An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;

    **b.** Any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured; or

    **c.** An employee of any contractor, subcontractor or sub-subcontractor; or

    **3.** "Bodily injury" to the spouse, child, parent, brother or sister of that employee of any contractor, subcontractor or sub-subcontractor or that "employee," "leased worker," "temporary worker" or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

"volunteer worker" of any insured as a consequence of items **1.** or **2.** above.

This applies to all claims and "suits" by any person or organization for damages, indemnity and/or any obligation to share damages with or repay someone else who must pay damages because of the injury.

The following is added to **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY,** section **2. Exclusions** of the policy:

This insurance does not apply to:

1. "Personal or advertising injury" to:

   a. An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;

   b. Any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured; or

   c. Any employee or anyone directly or indirectly employed by such contractor, subcontractor or sub-subcontractor or anyone for whose acts such contractor, subcontractor or sub-subcontractor may be liable

   if such "personal or advertising injury" arises out of and in the course of their employment or retention of such contractor, subcontractor or sub-subcontractor, regardless of whether or not it is caused in part by you; or

2. Any obligation of any insured to defend, indemnify or contribute with another because of "personal and advertising injury" to:

   a. An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;

   b. Any contractor, subcontractor or sub-subcontractor hired or retained by or for any insured; or

   c. Any employee of any contractor, subcontractor or sub-subcontractor; or

3. "Personal and advertising injury" to the spouse, child, parent, brother or sister of that employee, any contractor, subcontractor, sub-subcontractor or that employee of any contractor, subcontractor or sub-subcontractor or that "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured as a consequence of items **1.** or **2.** above.

This applies to all offenses, claims and "suits" by any person or organization for damages, indemnity and/or any obligation to share damages with or repay someone else who must pay damages because of the injury.

_____ /

AUTHORIZED REPRESENTATIVE      DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005



**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION— PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

a. That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

b. That occurs during the policy period and was, prior to the policy period, known to have

occurred by any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

(1) Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

(3) Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

_____     /     _____
AUTHORIZED REPRESENTATIVE              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HYDRAULIC FRACTURING EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**ERRORS AND OMISSIONS COVERAGE PART**

**A.** The following is added to Paragraph **2. Exclusions** of **Section I—Coverage A. Bodily Injury And Property Damage Liability** of the Commercial General Liability Coverage Part and Paragraph **2. Exclusions** of **SECTION I—COVERAGE** of the Errors And Omissions Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Bodily injury," "property damage" or "error or omission":

   **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any insured or by any other person or entity; or

   **b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground

geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I—Coverage B. Personal And Advertising Injury** Liability of the Commercial General Liability Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Personal and advertising injury":

   **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include,

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 103 of 170

but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity; or

b. Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

2. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

For purposes of this endorsement, the following definitions apply:

1. "Hydraulic fracturing," or hydrofracking means the process by which water, "proppants," chemicals and/or other fluid additives are injected at high pressure into underground geologic formations to create fractures, to facilitate the extraction of any hydrocarbons including but not limited to natural gas and/or oil.

2. "Flowback" means any substance containing returned "hydraulic fracturing" fluid, including but not limited to water, "proppants," "hydraulic fracturing" fluid additives; and, any hydrocarbon compounds, salts, conventional pollutants, organics, metals, and naturally occurring radioactive material brought to the surface with the water.

3. "Gas fracking" or liquefied propane/butane gas fracturing means the waterless process by which propane gel and "proppants" are injected at high pressure into underground geologic formations to create fractures, to facilitate the release and extraction of natural gas.

4. "Proppant" means particles that are used to keep fractures open after a hydraulic fracturing treatment.

<br>

_____   / _____

AUTHORIZED REPRESENTATIVE                     DATE

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AIRCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft. Use includes operation and "loading and unloading."

This exclusion applies even if claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured.

_____     /  _____
AUTHORIZED REPRESENTATIVE            DATE

GLS-457s (10-14)

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 105 of 170


## SCOTTSDALE INSURANCE COMPANY®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

**MINIMUM PREMIUM _____ 100 ____ %**

Item **5.b.** of the **Premium Audit** condition under **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV—LIQUOR LIABILITY CONDITIONS** and **SECTION IV—PRODUCTS/ COMPLETED OPERATIONS LIABILITY CONDI- TIONS** is amended to read:

**b.** The advance premium for this Coverage Part is a deposit premium only. The final premium shall be subject to audit. At the close of each audit period we will compute the earned pre- mium for that period. Any audit premiums are due and payable to us on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will re- turn the excess to the first Named Insured, subject to the minimum premium as defined below. In the event the first Named Insured fails or refuses to allow our representative to audit your books and records, we may unilat- erally charge a final premium for the Policy Period at double the minimum or advance premium, whichever is greater, and such final premium shall be immediately due and paya- ble on notice to the first Named Insured.

For purposes of this endorsement, the terms advance premium, earned premium, and minimum premium are defined as follows:

Advance Premium—the premium that is stated in the applicable initial policy Declarations or Renewal Cer- tificate and payable in full by the first Named Insured at the inception of each Policy Period.

Earned Premium—the premium that is developed by applying the rate(s) scheduled in the policy to the ac- tual premium basis for the audit period.

Minimum Premium—the lowest premium for which this insurance will be written for the Policy Period stated in **Item 2.** of the Declarations of the applicable initial policy or subsequent Renewal Certificate. This minimum premium is equal to 100% (unless a differ- ent percentage [%] is shown in the Schedule above) of the advance premium including any premium ad- justments made by endorsement to this policy during the Policy Period. Premium adjustments do not in- clude the audit premium developed for the Policy Pe- riod stated in **Item 2.** of the Declarations.

AUTHORIZED REPRESENTATIVE                    DATE

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PFC/PFAS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2. Exclusions** of SECTION I—COVERAGES, COVER-AGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph **2. Exclusions** of SECTION I—COVERAGES PRODUCTS/COMPLETED OPERATIONS, BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to:

**"PFC/PFAS"**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, con-tact with, exposure to, existence of, or presence of, any "PFC/PFAS"; or

**b.** Any loss, cost or expense arising out of, in whole or in part, the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "PFC/PFAS" by any insured or by any other person or entity.

This exclusion applies regardless of whether any other cause, event, material, substance, good or product contributed concurrently or in any sequence to such injury or damage. This exclusion also applies regardless of whether any "PFC/PFAS" is contained, used, included, involved or incorporated intentionally, accidentally or unknowingly in or on a good or product, component part of a good or product, or otherwise by any insured or by any other person or entity. This exclusion applies regardless of whether the inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of any "PFC/PFAS" occurs within or outside any building or other structure.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of SECTION I—COVERAGES, COVER-AGE B—PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to:

**"PFC/PFAS"**

**a.** "Personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation, ingestion, absorption or consumption of, con-tact with, exposure to, existence of, or presence of, any "PFC/PFAS"; or

**b.** Any loss, cost or expense arising out of, in whole or in part, the abating, testing for, monitoring,

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide®

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 107 of 170

cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "PFC/PFAS," by any insured or by any other person or entity.

This exclusion applies regardless of whether any other cause, event, material, substance, good or product contributed concurrently or in any sequence to such injury or damage. This exclusion also applies regardless of whether any "PFC/PFAS" is contained, used, included, involved or incorporated intentionally, accidentally or unknowingly in or on a good or product, component part of a good or product, or otherwise by any insured or by any other person or entity. This exclusion applies regardless of whether the inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of any "PFC/PFAS" occurs within or outside any building or other structure.

C. The following definition is added to **SECTION V—DEFINITIONS:**

"PFC/PFAS" means:

a. Any fluorosurfactant, perfluorinated chemical or compound, or perfluoroalkyl or polyfluoroalkyl substance, including but not limited to any per- or polyfluorinated acid (including, without limitation, perfluorooctanoic acid (PFOA), perfluorooctanesulfonic acid (PFOS), and per- and polyfluorether carboxylic acids), per- or polyfluorinated sulfonamide, per- or polyfluorinated iodide, per- or polyfluorinated aldehyde, per- or polyfluorinated sulfonyl fluoride, per- or polyfluorinated fluorotelomer substance or per- or polyfluorinated sulfonamido substance; or

b. Any perfluoroalkane or polyfluoroalkane substance, including but not limited to carbon tetrafluoride, perfluorooctane, and perfluoro-2-methylpentane; or

c. Any fluorinated polymers, including but not limited to fluoropolymers, perfluoropolyethers and side-chain-fluorinated polymers; or

any of the associated homologues, isomers, salts, esters, alcohols, acids, precursor chemicals and derivatives, and related degradation or by-products of any such constituent.

The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion, do not exclude coverage for "PFC/PFAS"-related injury, damage, loss, cost or expense.

**All other conditions and provisions of the policy remain unchanged by this endorsement.**

_____ / _____

AUTHORIZED REPRESENTATIVE                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide®

Underwritten by Scottsdale Insurance Company

ENDORSEMENT
NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION—TOTAL AIRCRAFT, AUTO OR WATERCRAFT WITH LIMITED EXCEPTIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. **SECTION I—COVERAGES, COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions,** subparagraph **g. Aircraft, Auto Or Watercraft** is deleted in its entirety and replaced by the following:

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any and all aircraft, "auto" or watercraft. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the failure to protect persons or property against any aircraft, "auto" or watercraft as a dangerous condition, defect or activity, including any actual or alleged failure to maintain a reasonably safe premises, failure to warn, or failure to provide security or safety measures.

This exclusion applies regardless of whether the aircraft, "auto" or watercraft is owned or operated by or rented or loaned to any insured or any other person or entity.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** Liability assumed under any "insured contract" for the ownership, maintenance or use of a watercraft;

**(3)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GLS-690 (03-23)

Page 1 of 2

**Nationwide**®

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 109 of 170

**(4)** Any "customer's auto" while on or next to those premises you own, rent or control that are used for any of the following businesses:

    **(a)** Auto Repair or Service Shops;

    **(b)** Car Washes, but not including self-service Car Washes;

    **(c)** Gasoline Stations;

    **(d)** Tire Dealers; or

    **(e)** Automobile Quick Lubrication Services.

**B.** For purposes of this endorsement, the following definition applies:

"Customer's auto" means an "auto" on those premises for the purpose of receiving the services normally provided in connection with those businesses but does not include an "auto" owned by or rented to loaned to any insured.

**All other terms and conditions of this Policy remain unchanged.**

_____    _____

                AUTHORIZED REPRESENTATIVE           DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Nationwide®

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 110 of 170

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS COMPLETED OPERATIONS COVERAGE PART**

The Condition entitled **When We Do Not Renew** is deleted in its entirety.

_____     /     _____
AUTHORIZED REPRESENTATIVE                          DATE

GLS-74s (9-05)

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 111 of 170


## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT (PER CLAIMANT)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

| Coverage | Amount and Basis of Deductible |
|---|---|
| Bodily Injury Liability | $ 1,000 per claimant |
| Property Damage Liability | $ 1,000 per claimant |
| Personal and Advertising Injury Liability | $ 1,000 per claimant |

1.  Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the Limits of Insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible. Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

2.  The deductible amounts apply to damages and "loss adjustment expenses."

    "Loss Adjustment Expenses" means the expenses which are incurred in conjunction with the defense, adjustment or settlement of claims made under any one of the policies and which are allocable to such claims according to generally accepted insurance industry practices; such expenses include, but are not limited to, expenditures for legal costs, attorneys fees, investigations, experts, independent adjustment services, and expenses incurred in obtaining recovery against any third party.

3.  The deductible amounts stated in the Schedule above apply, respectively:

    a.  Under the Bodily Injury Liability Coverage to all damages because of "bodily injury" sustained by one person;

    b.  Under the Property Damage Liability Coverage to all damages because of "property damage" sustained by one person, organization or association; and

    c.  Under the Personal and Advertising Injury Liability coverage to all damages sustained by one person, organization or association;

    as the result of any one "occurrence" or offense.

4. The terms of this insurance, including those with respect to our right and duty to defend any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply irrespective of the application of the deductible amount.

5. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____ /_____
AUTHORIZED REPRESENTATIVE                         DATE

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 113 of 170


SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF NONPAYMENT CANCELLATION CONDITION

Wherever a Cancellation Condition for nonpayment of premium is found in the policy, the following is added:

If the insured failed to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgagee, if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

AUTHORIZED REPRESENTATIVE                    DATE

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 114 of 170


## SCOTTSDALE INSURANCE COMPANY®

<div align="right">

**ENDORSEMENT
NO.** ——————

</div>

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

<div align="center">

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PREMIUM AUDIT

</div>

The following is added to the Premium Audit provision:

If the first Named Insured fails or refuses to provide documentation adequate to determine the apportionment of exposures by class code, we may unilaterally apply all exposures to the class code with the highest rate stated in the policy including any class code adjustments made by endorsement.

———————————————————————————— ⁄ ——————————————

<div align="center">

AUTHORIZED REPRESENTATIVE           DATE

</div>

Underwritten by Scottsdale Insurance Company

# ENDORSEMENT
## NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION—BIOMETRIC INFORMATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART**

The following exclusion is added to this policy:

**Access to or Disclosure of Biometric Data or Information**

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," "damages" or "injury or damage" directly or indirectly arising out of, caused by, based on, or in any way related to any access to or disclosure of any person's or organization's confidential or personal information, including "biometric information."

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others.

This exclusion applies even if the claims against any insured include actual or alleged violation of the responsibilities, obligations or duties imposed by the Illinois Biometric Information Privacy Act of 2008, as amended, the California Consumer Privacy Act of 2018, as amended, or any other similar law, regulation or statute.

For the purposes of this endorsement, the following definition applies:

"Biometric information" means biometric identifiers, or biometric data of any kind relating to biologically unique physical, physiological or behavioral characteristics of an individual, that may be collected or used to identify an individual and/or provide access rights to an individual, including but not limited to deoxyribonucleic acid (DNA), retina or iris scans, fingerprints, voiceprints or scans of hand or face geometry or other unique biological patterns or characteristics that are used to identify a specific individual regardless of how it is captured, converted, stored, or shared.

**All other terms, conditions, provisions, and exclusions of the policy remain unchanged.**

_____        _____
AUTHORIZED REPRESENTATIVE                                   DATE



Underwritten by Scottsdale Insurance Company

**ENDORSEMENT
NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION—DESIGNATED CHEMICALS, COMPOUNDS, ENERGY, MATERIAL OR SUBSTANCES

**A.** The following exclusions are added to the Policy:

This insurance does not apply to:

**1. Asbestos**

**a.** "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses actually or allegedly arising out of, caused by, based on, or in any way related to asbestos, asbestos fibers or any product containing asbestos or asbestos fibers;

**b.** Any economic loss, diminution of property value, abatement costs, or any other loss, cost or expense including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers; or

**c.** Any fees, fines, costs, or expenses of any nature whatsoever related to or resulting from the investigation or defense of any claim or suit arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

**2. Benzene**

**a.** "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses arising out of, caused by, based on, or in any way related to the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, benzene in any form;

**b.** Any damages, loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, benzene in any form, by any insured or by any other person or entity; or

**c.** Any claim or suit by or on behalf of a governmental authority for damages, loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, benzene in any form, by any insured or by any other person or entity.

This exclusion shall apply without regard to the source or sources of benzene, or the basis of the insured's liability. This exclusion includes defects or negligence in design, construction or materials, or any other event, conduct or misconduct, which may have or is claimed to have precipitated, caused or acted jointly, concurrently or in any sequence with benzene in any form in causing the

Nationwide®

"bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses.

3. **Bisphenol A (BPA)**

   a. "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses arising out of, caused by, based on, or in any way related to actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "bisphenol" in any form;

   b. The actual, alleged, threatened or suspected presence, respiration, inhalation, existence, ingestion of, or exposure to "bisphenol" or any material, substance, or product containing "bisphenol," however caused and whether direct or indirect, proximate or remote, or concurrently or in any sequence; or

   c. Any request, demand, claim, suit or order that you or others abate, test for, monitor, clean up, remove, recall, contain, treat, neutralize, detoxify, remediate, dispose of, or in any way respond to or assess the effects of "bisphenol" or any material, substance, or product containing or suspected of containing "bisphenol."

   For the purposes of this exclusion, the following definition applies:

   "Bisphenol" means Bisphenol A; any compound, combination, or mixture containing Bisphenol A; any metabolite, derivate, derivative or additive of Bisphenol A; any polycarbonate or resin based on or containing Bisphenol A; and any reaction of Bisphenol A.

4. **Brazilian Plywood**

   "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses actually or allegedly arising out of, caused by, based on, or in any way related to the distribution, installation, use or removal of "plywood" originating from and/or manufactured in Brazil.

   For the purposes of this exclusion, the following definition applies:

   "Plywood" means a construction material made of thin layers of wood glued or pressed together, including any combination of medium density fibreboard, oriented strand board or particle board.

5. **Chromated Copper Arsenate (CCA)**

   a. "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses arising out of, caused by, based on, or in any way related to the actual, alleged or suspected:

      (1) Ingestion, inhalation, absorption, presence, or prolonged physical exposure or threat of exposure to Chromated Copper Arsenate (CCA), or any CCA derivative, in any form, or goods or products containing any form of CCA or any CCA derivative;

      (2) Use of any form of CCA or any CCA derivative in constructing or manufacturing any good, product or structure;

      (3) Removal of any form of CCA or any CCA derivative from any good, product or structure; or

      (4) The manufacture, intellectual development, sale, transportation, storage or disposal of CCA, or any CCA derivative, or goods or products containing any form of CCA or any CCA derivative.

Nationwide®

**b.** Loss, cost or expense, including but not limited to defense costs, claim expenses, bonds or fees arising out of any request, demand or order that any insured or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or mitigate or in any way respond to, or assess the effects of CCA or any CCA derivative; or repair, replace or improve any property as a result of such effects.

**c.** Loss, cost or expense arising out of any claim or "suit" by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating, or in any way responding to, or assessing the effects of CCA; or repairing, replacing or improving any property as a result of such effects.

**d.** This exclusion applies regardless of whether the "bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses, cost or expense:

**(1)** Actually or allegedly arises out of any other cause or event that contributes concurrently or in any sequence to "bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses, cost or expense including defects or negligence in design, construction, inspection or materials;

**(2)** Was caused by the instigation of, or with the direct or indirect involvement of any insured, any insured's employees, additional insureds or other persons on the insured's premises or worksite at any time; or

**(3)** Was caused by or arose out of the failure at any time of any insured, the insured's employees, additional insureds or other persons on any insured's premises or worksite to supervise or keep the premises or worksite in a safe condition.

**6. Electromagnetic Field, Force or Matter**

**a.** "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses actually or allegedly arising out of, caused by, based on, or in any way related to "electromagnetic radiation," including, but not limited to, "electromagnetic radiation" produced or distributed by, or coming from, any type of:

**(1)** Line or tower used to transmit electrical current of any voltage, such as any power or electrical line or tower, or used to broadcast or transmit any type of signal, including, but not limited to, cellular, radio or television line or tower or any satellite station;

**(2)** Device that uses, produces, emits, directs, amplifies or conducts "electromagnetic radiation," including, but not limited to, any cellular phone, computer, electric blanket, microwave oven, X-ray machine, laser, range finding equipment, laser-equipped surveying equipment, electrical transformer, antenna, satellite, radar dish or ultraviolet (UV) light;

**(3)** Radar, radar-guided weapon systems, radar detecting weapon systems, or directed-energy weapon systems, including, but not limited to, any police, military, or weather radar, and any laser, laser weapon systems or high electromagnetic pulse (EMP) weapon systems; or

**(4)** Imaging equipment, whether used for medical, ground imaging or any other purpose, including, but not limited to, any X-ray, magnetic resonance imaging equipment, or ground-penetrating radar.

**b.** "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses any part of which arises out of, or allegedly arises out of, exposure to or the presence of "radioactive matter" or "radiation" whether alone, or combined with any other substances or factors, whether included in a product or otherwise. This exclusion applies regardless of whether such exposure occurs within or outside a building.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 119 of 170

Nationwide®

    **c.** This exclusion applies regardless of whether any other cause or factor contributed concurrently or in any sequence to any "bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses.

For the purposes of this exclusion, the following definitions apply:

    **a.** "Electromagnetic radiation" means, but is not limited to, any electrical or magnetic field of 30 Hz to 300 EHz, or any combination of electromagnetic or magnetic fields, radio waves, noise, charges, currents, signals or force of energy, radiation or electricity.

    **b.** "Radiation" or "radioactive matter" means, but is not limited to, ionizing radiation (either directly from unstable atomic nuclei or atoms, or as a consequence of a nuclear reaction), radioactive isotopes, alpha or beta particles or rays, gamma rays, X-rays, photons, nucleons, including protons and neutrons, and electrons.

**7. Lead Contamination**

    **a.** "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses arising out of, caused by, based on, or in any way related to the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of lead in any form.

    **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of lead by any insured or by any other person or entity.

**8. Nuclear Damage Liability**

    **a.** "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses:

        **(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

            **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

            **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **b.** "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses resulting from "hazardous properties" of "nuclear material," if:

        **(1)** The "nuclear material":

            **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

            **(b)** Has been discharged or dispersed therefrom;

        **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

Nationwide®

(3) The "bodily injury," "property damage", "personal and advertising injury," "damages," "injury or damage" or medical expenses arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, repair, demolition, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

"Bodily injury," "property damage," "personal and advertising injury," "damages" and "injury or damage" include all forms of radioactive contamination of persons or property.

For purposes of this exclusion, the following definitions apply:

**a.** "Hazardous properties" includes radioactive, toxic or explosive properties.

**b.** "Nuclear facility" means:

    **(1)** Any "nuclear reactor";

    **(2)** Any equipment or device designed or used for:

        **(a)** Separating the isotopes of uranium or plutonium;

        **(b)** Processing or utilizing "spent fuel"; or

        **(c)** Handling, processing or packaging "waste";

    **(3)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(4)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**c.** "Nuclear material" means "source material," "special nuclear material" or "by-product material."

**d.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**e.** "Source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**f.** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

**g.** "Waste" means any waste material:

    **(1)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

    **(2)** Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

Nationwide®

**9. Silica Or Silica-Related Dust**

    **a.** "Bodily injury," "property damage," "personal and advertising injury," "damages," "injury or damage" or medical expenses arising out of, caused by, based on, or in any way related to the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust."

    **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust," by any insured or by any other person or entity.

    For the purposes of this exclusion, the following definitions apply:

    **a.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

    **b.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

**All other terms and conditions of this Policy remain unchanged.**

_____/_____
                           AUTHORIZED REPRESENTATIVE            DATE



Nationwide®


SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT
NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

_____   / _____
AUTHORIZED REPRESENTATIVE                        DATE

UTS-74g (8-95)

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

# COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy Number: _CPS7985403_      Effective Date: _04/27/2024_

(12:01 A.M. Standard Time)

Named Insured: _DAVID KWITEK, DVG ORIEN LLC_      Agent Number: _48010_

**Item 1.** Business Description:   LESSOR OF BUILDINGS - ALL CONTAIN BEAUTY SCHOOLS HE OWNS UNDER

**Item 2.** Premises Described: **See Schedule of Locations**

**Item 3.** $500 Deductible unless otherwise indicated.

**Item 4.** Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUILDING | $2,000,000 | BASIC | 80 % |

Construction: _FRAME_      Year Built: _1970_    No. of Stories: _2_

☐ Agreed Value: _____    Expires: _____    ☐ Replacement Cost: _____

☐ Business Income: Monthly Limit: _____    Maximum Period: _____    Extended Period: _____

Policy Deductible: _$2500_    ☐ Reporting: _____    ☐ Inflation Guard: _____ %

| Special Deductibles |||
|---|---|---|
| **Wind or Hail** | **Named Storm** | **Earthquake** |
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
|  |  |  | $ |  | % |

Construction: _____      Year Built: _____    No. of Stories: _____

☐ Agreed Value: _____    Expires: _____    ☐ Replacement Cost: _____

☐ Business Income: Monthly Limit: _____    Maximum Period: _____    Extended Period: _____

Policy Deductible: _____    ☐ Reporting: _____    ☐ Inflation Guard: _____ %

| Special Deductibles |||
|---|---|---|
| **Wind or Hail** | **Named Storm** | **Earthquake** |
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

Nationwide®

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 124 of 170

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS (continued)

Policy Number: CPS7985403                    Effective Date: 04/27/2024

(12:01 A.M. Standard Time)

Named Insured: DAVID KWITEK, DVG ORIEN LLC          Agent Number: 48010

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|-----------|-----------|----------|--------------------|-----------------------|--------|
|           |           |          | $                  |                       | %      |

Construction: _____   Year Built: _____   No. of Stories: _____

☐ Agreed Value: _____   Expires: _____   ☐ Replacement Cost: _____

☐ Business Income: Monthly Limit: _____   Maximum Period: _____   Extended Period: _____

Policy Deductible: _____   ☐ Reporting: _____   ☐ Inflation Guard: _____%

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|--------------|-------------|------------|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

**SPECIAL PROVISIONS (if any):**



**Item 5.** Forms and Endorsements

Form(s) and Endorsement(s) made part of this policy at the time of issue:

**See Schedule of Forms and Endorsements**

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER
WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S),
IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY.

Nationwide®

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 126 of 170

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

   **(1)** Are licensed for use on public roads; or

   **(2)** Are operated principally away from the described premises.

   This paragraph does not apply to:

     **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 127 of 170

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 129 of 170

### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

### e. Increased Cost Of Construction

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 130 of 170

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

 © Insurance Services Office, Inc., 2011 **CP 00 10 10 12**

(4) The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 132 of 170

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the business personal property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

3. Increased Cost Of Construction; and

4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance -- Building 1: | $ | 60,000 |
| Limit of Insurance -- Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
−      250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

© Insurance Services Office, Inc., 2011

Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 135 of 170

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 136 of 170

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

### Example 3

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location 1: | $ 75,000 |
| | Building at Location 2: | $100,000 |
| | Personal Property at Location 2: | $ 75,000 |
| | | $250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $180,000 |
| | The Deductible is: | $ 1,000 |
| | The amount of loss is: | |
| | Building at Location 2: | $ 30,000 |
| | Personal Property at Location 2: | $ 20,000 |
| | | $ 50,000 |

**Step (1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

### 1. Agreed Value

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 139 of 170

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

  **(1)** On or after the effective date of this Optional Coverage; and

  **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

  **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

  **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

  **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| | | | |
|---|---|---|---|
| If: | The applicable Limit of Insurance is: | $ | 100,000 |
| | The annual percentage increase is: | | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

  **(1)** Personal property of others;

  **(2)** Contents of a residence;

  **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

  **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

  **(1)** Until the lost or damaged property is actually repaired or replaced; and

  **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

  **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

  **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

  **(1)** The Limit of Insurance applicable to the lost or damaged property;

  **(2)** The cost to replace the lost or damaged property with other property:

    **(a)** Of comparable material and quality; and

    **(b)** Used for the same purpose; or

  **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987 **CP 00 90 07 88** □

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 143 of 170

**SCOTTSDALE INSURANCE COMPANY®**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SECURED PREMISES WARRANTY

This endorsement modifies insurance provided under the following:

**BUILDERS RISK COVERAGE FORM**
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

### SCHEDULE

| Premises No: | Building No: | Address: |
|---|---|---|
| 1 | 1 | 362 STEEPLE POINT WAY VERONA WI 53593 |
| | | |
| | | |

This provision applies to all buildings or structures described in the Schedule above. If the Schedule is left blank, then this provision applies to all buildings or structures shown in the Declarations.

It is a condition of this policy that while the building(s) or structure(s) is under renovation and workers not on premises or at any time while the building is vacant or unoccupied, we will not pay for loss or damage if:

1. All doors, windows and other openings into or out of building(s) or structure(s) are not locked and/or secured; or

2. You fail to maintain the building(s) or structure(s) as stated in paragraph **1.** of this endorsement.

_____     /_____
AUTHORIZED REPRESENTATIVE                        DATE

 **SCOTTSDALE INSURANCE COMPANY®**

# ENDORSEMENT
# NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7985403 | 04/27/2024 | DAVID KWITEK, DVG ORIEN LLC | 48010 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## VANDALISM SUBLIMIT

This endorsement modifies insurance provided under the following:

**CAUSES OF LOSS—BASIC FORM
CAUSES OF LOSS—BROAD FORM
CAUSES OF LOSS—SPECIAL FORM**

### SCHEDULE

| Premises/Building Number | Address |
|---|---|
| 1 / 1 | 362 STEEPLE POINT WAY   VERONA WI 53593 DANE |
| | |
| | |
| | |
| | |

With respect to the location(s) indicated in the Schedule, the following is added to paragraph **8.** of section **A. Covered Causes Of Loss** of the **CAUSES OF LOSS—BASIC FORM** and **CAUSES OF LOSS—BROAD FORM** and to section **C. Limitations** of the **CAUSES OF LOSS—SPECIAL FORM:**

The most we will pay for loss or damage by vandalism in any one occurrence is $ _____10,000_____ or _____% of the total limits applicable to the Covered Property at the premises which sustained loss or damage.

This sublimit is part of, and not in addition to, the applicable Building and/or Personal Property Limit of Insurance shown on the Commercial Property Coverage Part Supplemental Declarations.

_____   ___/_____

AUTHORIZED REPRESENTATIVE                                    DATE

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 145 of 170

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 146 of 170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

The following is added to the **Cancellation** Common Policy Condition:

If any one of the following conditions exists at any building that is Covered Property in this policy, we may cancel this Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least five days before the effective date of cancellation.

**A.** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

   **1.** Seasonal unoccupancy;

   **2.** Buildings in the course of construction, renovation or addition; or

   **3.** Buildings to which the Vacancy Permit endorsement applies.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**B.** After damage by a covered cause of loss, permanent repairs to the building:

   **1.** Have not started; and

   **2.** Have not been contracted for,

   within 30 days of initial payment of loss.

**C.** The building has:

   **1.** An outstanding order to vacate;

   **2.** An outstanding demolition order;

   **3.** Been declared unsafe by governmental authority.

**D.** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**E.** Failure to:

   **1.** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

   **2.** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

© ISO Properties, Inc., 2007
Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 147 of 170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

## SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|:---:|:---:|:---:|
| 1 | 1 | P-1 |
|  |  |  |
|  |  |  |

| Describe Any "P-9": |
|---|
|  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

As a condition of this insurance, you are required to:

**1.** Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

**2.** Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and

**3.** Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss - Basic Form

Causes Of Loss - Broad Form

Causes Of Loss - Special Form

Mortgageholders Errors And Omissions Coverage Form

Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph **A.**

**C.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 148 of 170

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VACANCY PERMIT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

| Prem. No. | Bldg. No. | Excepted Causes of Loss | | Permit Period | |
|---|---|---|---|---|---|
| | | Vandalism | Sprinkler Leakage | From | To |
| 1 | 1 | X | | 04/27/2024 | 07/27/2024 |

**A.** The VACANCY Loss Condition does not apply to direct physical loss or damage:

  **1.** At the locations; and

  **2.** During the Permit Period;

  shown in the Schedule or in the Declarations.

**B.** This Vacancy Permit does not apply to the Excepted Causes of Loss indicated in the Declarations or by an "X" in the Schedule.

# CAUSES OF LOSS – BASIC FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **E.** Definitions.

## A. Covered Causes Of Loss

When Basic is shown in the Declarations, Covered Causes of Loss means the following:

1. Fire.

2. Lightning.

3. Explosion, including the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass. This cause of loss does not include loss or damage by:

   a. Rupture, bursting or operation of pressure-relief devices; or

   b. Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water.

4. Windstorm or Hail, but not including:

   a. Frost or cold weather;

   b. Ice (other than hail), snow or sleet, whether driven by wind or not;

   c. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters; or

   d. Loss or damage by hail to lawns, trees, shrubs or plants which are part of a vegetated roof.

5. Smoke causing sudden and accidental loss or damage. This cause of loss does not include smoke from agricultural smudging or industrial operations.

6. Aircraft or Vehicles, meaning only physical contact of an aircraft, a spacecraft, a self-propelled missile, a vehicle or an object thrown up by a vehicle with the described property or with the building or structure containing the described property. This cause of loss includes loss or damage by objects falling from aircraft.

   We will not pay for loss or damage caused by or resulting from vehicles you own or which are operated in the course of your business.

7. Riot or Civil Commotion, including:

   a. Acts of striking employees while occupying the described premises; and

   b. Looting occurring at the time and place of a riot or civil commotion.

8. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.

   We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

9. Sprinkler Leakage, meaning leakage or discharge of any substance from an Automatic Sprinkler System, including collapse of a tank that is part of the system.

   If the building or structure containing the Automatic Sprinkler System is Covered Property, we will also pay the cost to:

   a. Repair or replace damaged parts of the Automatic Sprinkler System if the damage:

      (1) Results in sprinkler leakage; or

      (2) Is directly caused by freezing.

   b. Tear out and replace any part of the building or structure to repair damage to the Automatic Sprinkler System that has resulted in sprinkler leakage.

   Automatic Sprinkler System means:

   (1) Any automatic fire-protective or extinguishing system, including connected:

      (a) Sprinklers and discharge nozzles;

      (b) Ducts, pipes, valves and fittings;

      (c) Tanks, their component parts and supports; and

      (d) Pumps and private fire protection mains.

   (2) When supplied from an automatic fire-protective system:

      (a) Non-automatic fire-protective systems; and

      (b) Hydrants, standpipes and outlets.

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 151 of 170

10. Sinkhole Collapse, meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    a. The cost of filling sinkholes; or

    b. Sinking or collapse of land into man-made underground cavities.

11. Volcanic Action, meaning direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    a. Airborne volcanic blast or airborne shock waves;

    b. Ash, dust or particulate matter; or

    c. Lava flow.

    With respect to coverage for Volcanic Action as set forth in **11.a.**, **11.b.** and **11.c.**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

    This cause of loss does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    **a. Ordinance Or Law**

    The enforcement of or compliance with any ordinance or law:

    (1) Regulating the construction, use or repair of any property; or

    (2) Requiring the tearing down of any property, including the cost of removing its debris.

    This exclusion, Ordinance Or Law, applies whether the loss results from:

    (a) An ordinance or law that is enforced even if the property has not been damaged; or

    (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

(1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire or Volcanic Action, we will pay for the loss or damage caused by that fire or Volcanic Action.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

© Insurance Services Office, Inc., 2011

Case 4:24-cv-00809-DGK    Document 1-1    Filed 12/19/24    Page 152 of 170

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** Foundations, walls, floors or paved surfaces;

    **(b)** Basements, whether paved or not; or

    **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from:

   a. Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

      (1) Electrical or electronic wire, device, appliance, system or network; or

      (2) Device, appliance, system or network utilizing cellular or satellite technology.

      For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

         (a) Electrical current, including arcing;

         (b) Electrical charge produced or conducted by a magnetic or electromagnetic field;

         (c) Pulse of electromagnetic energy; or

         (d) Electromagnetic waves or microwaves.

      But if fire results, we will pay for the loss or damage caused by that fire.

   b. Rupture or bursting of water pipes (other than Automatic Sprinkler Systems) unless caused by a Covered Cause of Loss.

   c. Leakage or discharge of water or steam from any part of a system or appliance containing water or steam (other than an Automatic Sprinkler System), unless the leakage or discharge occurs because the system or appliance was damaged by a Covered Cause of Loss. But we will not pay for loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

   d. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

      But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion.

   e. Mechanical breakdown, including rupture or bursting caused by centrifugal force.

      But if mechanical breakdown results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

   f. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. **Special Exclusions**

   The following provisions apply only to the specified Coverage Forms:

   a. **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

      We will not pay for:

      (1) Any loss caused by or resulting from:

         (a) Damage or destruction of "finished stock"; or

         (b) The time required to reproduce "finished stock".

         This exclusion does not apply to Extra Expense.

      (2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

      (3) Any increase of loss caused by or resulting from:

         (a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

         (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

      (4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

      (5) Any other consequential loss.

 © Insurance Services Office, Inc., 2011 CP 10 10 10 12

**b. Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

   (a) Your cancelling the lease;

   (b) The suspension, lapse or cancellation of any license; or

   (c) Any other consequential loss.

**c. Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

   (a) Paragraph **B.1.a.** Ordinance Or Law;

   (b) Paragraph **B.1.c.** Governmental Action;

   (c) Paragraph **B.1.d.** Nuclear Hazard;

   (d) Paragraph **B.1.e.** Utility Services; and

   (e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

   **(a) Contractual Liability**

    We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

     (i) Your assumption of liability was executed prior to the accident; and

     (ii) The building is Covered Property under this Coverage Form.

   **(b) Nuclear Hazard**

    We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**C. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **C.2.** and **C.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

   a. A Covered Cause of Loss other than fire or lightning; or

   b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

   This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

   b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

   c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **C.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of Covered Causes of Loss (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **b.** of Covered Causes Of Loss **9.** Sprinkler Leakage.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**D. Limitation**

We will pay for loss of animals only if they are killed or their destruction is made necessary.

**E. Definitions**

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

© Insurance Services Office, Inc., 2011

Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 156 of 170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following exclusion is added to Paragraph **B. Exclusions:**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Cyber Incident**

1. Unauthorized access to or use of any computer system (including electronic data).

2. Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

3. Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**B. Exceptions And Limitations**

1. **Fire Or Explosion**

   If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

2. **Additional Coverage**

   The exclusion in Paragraph **A.** does not apply to the extent that coverage is provided in the:

   **a.** Additional Coverage – Electronic Data; or

   **b.** Additional Coverage – Interruption Of Computer Operations.

3. **Electronic Commerce Endorsement**

   The exclusion in Paragraph **A.** does not apply to the Electronic Commerce (E-Commerce) endorsement when attached to your policy.

**C. Vandalism**

The following is added to Vandalism, if Vandalism coverage is not otherwise excluded under the Standard Property Policy or the Causes Of Loss – Basic, Broad or Special Forms and if applicable to the premises described in the Declarations:

Vandalism does not include a cyber incident as described in Paragraph **A.**

Case 4:24-cv-00809-DGK     Document 1-1     Filed 12/19/24     Page 157 of 170



**Nationwide®**
is on your side

P.O. Box 182452
Columbus, OH 43218-2452

July 9, 2024

Dave Kwitek
362 Steeple Point Way
Verona, WI 53593

RE:  Claim No.:         02172156
     Insured:          David Kwitek, DVG Orien LLC
     Underwriting Co.:  Scottsdale Insurance Company
     Policy No.:        CPS7985403
     Date of Loss:      June 14, 2024
     Loss Location:     8500 Ward Pkwy; Kansas City, MO 64114
     Type of Loss:      Vandalism

Dear Mr. Kwitek,

We are writing in regard to the claim for damage as referenced above.

We requested a field adjuster to inspect the dwelling at the loss location. We reviewed the plumber report, police report, and video provided regarding a reported sawed waterline as the result of vandalism.

Water discharge, and vandalism are not covered causes of loss under the policy.

Please refer to the policy, form CP 00 10 (10-12) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, which states as follows:

      **A.**    **Coverage**

             **We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.**

             **3.**    **Covered Causes Of Loss**

                    **See applicable Causes Of Loss form as shown in the Declarations.**

      **B.**    **Exclusions And Limitations**



EXHIBIT
**Ex B**

*See applicable Causes Of Loss form as shown in the Declarations.*

We now call your attention to the Causes of Loss Form, Form No. CP 10 10 (10-12) - CAUSES OF LOSS – BASIC FORM, which states:

**A.    Covered Causes Of Loss**

**When Basic is shown in the Declarations, Covered Causes of Loss means the following:**

**1.    Fire.**

**2.    Lightning.**

**3.    Explosion, including the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass. This cause of loss does not include loss or damage by:**

**4.    Windstorm or Hail, but not including:**

**5.    Smoke causing sudden and accidental loss or damage. This cause of loss does not include smoke from agricultural smudging or industrial operations.**

**6.    Aircraft or Vehicles, meaning only physical contact of an aircraft, a spacecraft, a self-propelled missile, a vehicle or an object thrown up by a vehicle with the described property or with the building or structure containing the described property. This cause of loss includes loss or damage by objects falling from aircraft.**

**7.    Riot or Civil Commotion, including:**

**8.    Vandalism, meaning willful and malicious damage to, or destruction of, the described property.**

**We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.**

**9.    Sprinkler Leakage, meaning leakage or discharge of any substance from an Automatic Sprinkler System, including collapse of a tank that is part of the system.**

      10.    **Sinkhole Collapse, meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:**

      11.    **Volcanic Action, meaning direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:**

**B.**    **Exclusions**

      1.    **We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.**

            g.    **Water**

      2.    **We will not pay for loss or damage caused by or resulting from:**

            b.    **Rupture or bursting of water pipes (other than Automatic Sprinkler Systems) unless caused by a Covered Cause of Loss.**

The policy also contains the following endorsement language that reads as follows:

**CP 04 50 (07-88)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**VACANCY PERMIT**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Prem.<br>No. | Bldg.<br>No. | Excepted Causes of Loss | | Permit Period | |
|---|---|---|---|---|---|
| | | **Vandalism** | **Sprinkler Leakage** | **From** | **To** |
| 1 | 1 | X | | 04/27/2024<br>07/27/2024 | |

    **A.**    The **VACANCY Loss Condition does not apply to direct physical loss or damage:**

        **1.**    **At the locations; and**
        **2.**    **During the Permit Period;**

        **shown in the Schedule or in the Declarations.**

    **B.**    **This Vacancy Permit does not apply to the Excepted Causes of Loss indicated in the Declarations or by an "X" in the Schedule.**

The policy provides coverage for direct physical loss or damage to covered property caused by the covered causes of loss listed above. No damage from any covered cause of loss was reported. Vandalism, water discharge, wear and tear, and deterioration are not covered causes of loss. Additionally, the policy excludes from coverage damage caused by rupture or bursting of pipes and discharge of water from a system containing water. Therefore, no coverage is provided for the plumbing repair or water damages. Furthermore, no coverage is provided for mold, if any is discovered, because damage caused by mold is generally excluded from coverage and the damage was not caused by a covered cause of loss.

Unfortunately, we will not be able to make any payment.

Scottsdale Insurance Company reserves the right to review any additional claims or amendments to this claim and to make a separate determination as to whether a new claim or amendment to this claim is covered by the policy. Any decision we make regarding coverage is based on the facts as presented to us prior to our coverage determination and should not be construed as applicable to a new claim or an amendment to this claim. Our right to have notice of either situation is reserved, as are the notice conditions of the policy.

If you believe there is additional information that should be considered or some other reason the policy should provide coverage, please provide that information in writing as soon as possible upon receipt of this letter.

Sincerely,


Haley Moegenburg
Claim Specialist II
480-365-2495
Nationwide E&S/Specialty

Scottsdale Insurance Company
P.O. Box 182452
Columbus, OH 43218-2452
1-800-423-7675


cc: 48010

# ROUSE FRETS WHITE GOSS
# GENTILE RHODES, P.C.

RYAN R. COOK
rcook@rousepc.com
816.502.4712

July 18, 2024

**VIA EMAIL**

Haley Moegenburg
Claim Specialist II
Nationwide E&S/Specialty
Scottsdale Insurance Company
Post Office Box 182452
Columbus, Ohio 43218-2452
moegeh1@nationwide.com

> Re:    Claim No.: 02172156
> Insured: David Kwitek, DVG Orien LLC
> Underwriting Co.: Scottsdale Insurance Company
> Policy No.: CPS7985403
> Date of Loss: June 14, 2024
> Loss Location: 8500 Ward Pkwy; Kansas City, MO 64114
> Type of Loss: Vandalism

Dear Ms. Moegenburg,

Our law firm represents Mr. Kwitek and his company. I have received your letter dated July 9, 2024 in which you state "[w]ater discharge, and vandalism are not covered causes of loss under the policy [referenced above]." I respectfully disagree.

## I.    The policy covers property damage

SECTION I – COVERAGES
COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or **"property damage"** to which this insurance applies.

17. "Property damage" means:

a. **Physical injury to tangible property**, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

EXHIBIT
**Ex C**

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

## II.    There was an occurrence

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

## III.    The property damage was not intended from the standpoint of the insured

2. Exclusions

This insurance does not apply to:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

## IV.    Vandalism is a covered cause of loss

8. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.

## V.    Your letter misstates the exclusions on which you rely

In your letter, you cite two exclusions that you state preclude coverage. The first is "water" in ¶ B.1.g. Your letter simply includes "water." But you omit the rest of the paragraph, which reads as follows.

g. Water

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

{34754 / 73078; 1025998. }

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

The policy limits the definition of "water" to the five circumstances in subparagraphs (1) through (5). By doing so, the definition of "water," and therefore this exclusion, does not apply to water resulting from vandalism, a covered cause of loss. *Expressio unius est exclusio alterius.* This definition will be construed against the carrier under Missouri law. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 383 (Mo. App. 1999).

Next, you cite the exclusion for "rupture or bursting of water pipes . . . ."

2. We will not pay for loss or damage caused by or resulting from:

b. Rupture or bursting of water pipes (other than Automatic Sprinkler Systems) unless caused by a Covered Cause of Loss.

The pipes at issue neither ruptured nor burst. They were deliberately cut in an act of vandalism. And vandalism is a covered cause of loss. In Missouri, the burden of proof is on the insurer to show an exclusion clause applies. *Lexington Ins. v. Integrity Land Title Co.*, 852 F.Supp.2d 1119, 1131–32 (E.D. Mo. 2012) aff'd, 721 F.3d 958 (8th Cir. 2013). Here, the exclusions do not apply.

## VI.     Endorsement CP 04 50 is not applicable here

Your final argument is that the Vacancy Permit endorsement applies to preclude coverage. Not so. The building was not vacant under the policy definitions.

6. Vacancy

a. Description Of Terms

(2) Buildings under construction or renovation are not considered vacant.

Again, this language will be construed against the carrier under Missouri law. I add that an insurer is bound by the information acquired by its agent in taking an application and is assumed to have at least constructive notice of what the agent knows. *Bledsoe v. Farm Bureau Mut. Ins.*, 341 S.W.2d 626, 629 (Mo. App. 1960). When the agent knows that the insured building is not currently occupied or is unlikely to be occupied within the prescribed time, and issues a policy containing a vacancy provision, the insurer waives the insured's compliance with the provision. *Id.* The agent who obtained the policy at issue knew it would be under construction. That, plus the policy language cited above, is fatal to this endorsement.

## VII.   The carrier needs to reconsider its denial of this claim

A carrier is not obligated to state in a letter to its insured its reasons for its failure to pay a claim; but where reasons are given, the basis for denying a claim must be valid and supported by the insurance carrier's investigation. *Overcast v. Billings Mut. Ins.*, 11 S.W.3d 62, 71 (Mo. banc 2000). This letter refutes the reasons for which the claim has been denied. The denial is not in good faith, nor has it been made with reasonable cause.

If the carrier does not reconsider and cover this claim, we will counsel our client to authorize us to sue for breach of contract, breach of the duty of good faith and fair dealing, and vexatious refusal.

### A.   Breach of contract and the duty of good faith and fair dealing

A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). Missouri law implies a duty of good faith and fair dealing in every contract. *See Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 410 (Mo. App. 1996); *Slone v. Purina Mills Inc.*, 927 S.W.2d 358, 368 (Mo. App. 1996). This implied duty "prevents one party to a contract to [sic] exercise a judgment conferred by the express terms of the agreement in such a manner that evades the spirit of the transaction or denies the other party the expected benefit of the contract." *Acetylene Gas*, 939 S.W.2d at 410. Put another way, "[i]t is the duty of one party to a contract to cooperate with the other to enable performance and achievement of the expected benefits." *Slone*, 927 S.W.2d at 368.

We are confident we will make a submissible case on these claims.

### B. Vexatious refusal

Missouri has two pertinent statutes for any vexatious refusal to pay claims against an insurer. Here they are.

#### R.S.Mo. § 375.296

In any action, suit or other proceeding instituted against any insurance company, association or other insurer upon any contract of insurance issued or delivered in this state to a resident of this state, or to a corporation incorporated in or authorized to do business in this state, if the insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of the action, suit or proceeding, to make payment under and in accordance with the terms and provisions of the contract of insurance, and it shall appear from the evidence that the refusal was vexatious and without reasonable cause, the court or jury may, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.420. Failure of an insurer to appear and defend any action, suit or other proceeding shall be deemed prima facie evidence that its failure to make payment was vexatious without reasonable cause.

#### R.S.Mo. § 375.420

In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Section 375.420 requires proof of three elements for the plaintiff to prevail: (1) the existence of an insurance policy with the defendant, (2) the defendant's refusal to pay under the policy, and (3) such refusal was "without reasonable cause or excuse." *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006), as modified on denial of reh'g, (Apr. 11, 2006).

I am not going to get in the weeds here, but what the carrier needs to understand is that, if the claim is not covered under the policy, it's going to be required to spend more money than it would cost to pay the claim in attorney's fees to defend a lawsuit. In addition, it may have to pay our firm's attorney's fees as well as a statutory penalty. If we were talking about tens of thousands

of dollars, it might make sense for the carrier to take on this risk. But we're not talking about tens of thousands of dollars.

## VIII.  Conclusion

Respectfully, I ask that the carrier reconsider and pay this claim in full.

Very truly yours,

Ryan R. Cook

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

DAVE KWITEK,

                **PLAINTIFF(S),**                **CASE NO. 2416-CV33260**

**VS.**                                                      **DIVISION 9**

NATIONWIDE INSURANCE COMPANY OF AMERICA,

                **DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION

---

       NOTICE IS HEREBY GIVEN that this case is currently assigned to the Honorable JOEL P FAHNESTOCK and a Case Management Conference will be held with the Honorable JOEL P FAHNESTOCK on **10-MAR-2025** in **DIVISION 9** at **09:00 AM,** pursuant to Administrative Order. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

       A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

       At the Case Management Conference, counsel should be prepared to address at least the following:

      a.     A trial setting;

      b.     Expert Witness Disclosure Cutoff Date;

      c.     A schedule for the orderly preparation of the case for trial;

      d.     Any issues which require input or action by the Court;

      e.     The status of settlement negotiations.

Case 4:24-cv-00809-DGK   Document 1-1   Filed 12/19/24   Page 169 of 170

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

**/S/ JOEL P FAHNESTOCK**
JOEL P FAHNESTOCK, **Circuit Judge**

### Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
RANDALL LEE RHODES, 5250 W 116TH PL STE 400, LEAWOOD, KS 66211

Defendant(s):
NATIONWIDE INSURANCE COMPANY OF AMERICA
Dated: 20-NOV-2024                               BEVERLY A. NEWMAN
                                                 Court Administrator